# PRATLEY ET AL. AS THE COUNTY CANVASSING BOARD OF CARBON COUNTY v. STATE EX REL. CAMPBELL.

ELECTIONS—COUNTY CANVASSING BOARD—CANVASS OF BALLOTS OF ABSENT VOTERS—RETURNS—DELIVERY—INDORSEMENT OF BALLOT—COUNTING BALLOTS NOT OFFICIALLY INDORSED—STATUTORY CONSTRUCTION.

1. In making a canvass of the votes cast at an election the board of county canvassers must determine upon the genuineness of precinct returns, but in other respects their duty as to such returns is merely ministerial, requiring a setting down of the number of votes returned as cast in the various precincts for the different offices, or upon questions that may have been submitted, and calculating the total of such votes.

2. Under the act of 1905, (Ch. 88, Laws, 1905) permitting and regulating the voting in another precinct by an elector unavoidably absent from the one in which he resides, the fact that the certificate or affidavit required by Section 2 to be furnished to the judges of election is not inclosed or returned with the ballot does not justify the rejection of the ballot by the board of county canvassers, or the presumption that the required certificate or affidavit was not properly furnished.

3. Assuming the right of the county canvassing board to determine in the first place whether the indorsement upon an envelope purporting to contain the vote of an absent voter, under the act of 1905, is genuine, or whether the

envelope was received in such a manner as to show fraud
in its transmission, the discretion in that respect will be
held to have been exercised as to envelopes shown to have
been opened by the board, and the board's action in such
case is to be understood as showing that they regarded such
envelopes as genuine, notwithstanding that the signature
to the indorsement on one envelope omitted the words
"judge of election."

4. The provision of the act requiring the absent voter's affi-
davit made at the time of voting to be inclosed and re-
turned with the ballot is to be construed as directory, and
thus avoid disfranchising a voter through no fault of his
own, since the performance of the duty is not expressly
declared essential to the validity of the ballot, or the right
to have it counted, but the strong implication is to the
contrary.

5. Under the said act of 1905, when the return of an absent
voter's ballot has been accepted by the county canvassing
board as genuine, and said vote is not challenged before
the board in the manner provided in the act, or the chal-
lenge is not sustained, the vote is to be counted, in the
absence of some infirmity in the ballot itself authorizing
its rejection.

6. The fact that the absent voter's affidavit required by Sec-
tion 3 of the act to be made before voting has not been
inclosed and returned with the ballot, or that another and
different affidavit has been so inclosed and returned, is
not conclusive that the proper affidavit was not in fact
made, and does not authorize a rejection of the ballot
by the canvassing board, but it is to be presumed, so far
as the duty of the board is concerned, that the judges of
election who accepted the ballot performed their duty, and
had furnished to them the required affidavit and the re-
quired evidences of the voter's qualification.

7. There being no charge of fraud in the transmission of the
vote of an absent voter, but it appearing that it was re-
ceived by the county clerk, and accepted and opened by
the board, the fact that it was delivered to the clerk in
person by a courier, instead of by mail, or was mailed to
another county officer mistakenly named as county clerk,
does not authorize the county canvassing board to reject
said vote and refuse to count it.

8. A lawful ballot is defined by statute as an official ballot
officially stamped and marked with the initials or name
of a judge of election, and, prior to 1907, it was provided

that no judge of election shall deposit in any ballot box any ballot not officially stamped and indorsed, and that any ballot not having indorsed thereon the official stamp, or the name or initials of a judge of election, shall be void, and shall not be counted, which provisions had been construed by the court as mandatory. In 1907 the statute was amended by declaring it the duty of judges of election to see that the official indorsement is upon each ballot before depositing the same in the ballot box, and that in the canvass of the votes if there is a greater number of ballots in the box than the number called for by the poll list, the judges shall reject any ballots not officially indorsed until the number of ballots in the box shall agree with the number on the poll list. *Held,* that the amendatory statute is to be construed with the legislative intent in view, which was to avoid the mandatory effect of provisions of the statute as previously construed; and that under the statute as amended, except to make the poll list and number of ballots agree, a ballot accepted and deposited is not to be invalidated or excluded from the count because of the absence of the proper indorsement, where there is no evidence of fraud.

9. In the absence of fraud, the fact that an absent voter's ballot, cast and returned under the act of 1905, is not indorsed with the name or initials of a judge of election does not authorize the county canvassing board to reject and refuse to count the ballot.

10. Before a county canvassing board had completed the canvass an alternative writ of mandamus was issued and served commanding the board to record and count certain votes returned as cast by absent voters in precincts other than their own, as authorized by Chapter 88 of the Laws of 1905. The board subsequently met and adjourned without counting the votes in controversy, and the reasons for not counting them were held insufficient in the mandamus suit, and a peremptory writ was ordered requiring the board to reconvene and count the votes. *Held,* that since the board had not counted the votes in question nor shown sufficient cause for not doing so, they had not completed the canvass, and the peremptory writ was proper.

[Decided February 26, 1909.]          (99 Pac. 1116.)

Error to the District Court, Carbon County; Hon. Charles E. Carpenter, Judge.

Mandamus to compel the county canvassing board of Carbon County to include in their count and abstracts certain ballots cast by voters absent from their own precincts, pursuant to Chapter 88, Laws of 1905. From a judgment ordering a peremptory writ the board prosecuted error. The facts are stated in the opinion.

*L. E. Armstrong, Chris. Mathison* and *George E. Brimmer,* for plaintiffs in error.

A demurrer to the whole pleading should be overruled if any of the causes or defenses therein stated are good. It is not competent to assail a clause or several clauses or sentences in a pleading by demurrer. (Bryant's Code Pl., Sec. 170; Ferrier v. Ferrier, 64 Cal. 23; Reed v. Drais, 67 Cal. 491; George v. Edney, (Neb.) 54 N. W. 986; Cheviot v. Lumber Co., 4 Wash. 721; Summers v. Ins. Co., 12 Wyo. 369; Ingersoll v. Davis, 14 Wyo. 120; Kincaid Code Pl. (2nd Ed.), Secs. 111, 115, 116; Whittaker's Ann. Code 98, 99.) If all or some of the causes stated in the return to the alternative writ present issues of fact the board should have been allowed to substantiate the same by proof. (State v. Board, 31 Pac. 879.) If the return of the board disclosed matters requiring authentication as to the genuineness or integrity of the returns of the votes in question, the demurrer should have been overruled. (Keith v. Wendt 107 N. W. 443; Davis v. Grunig, 76 Pac. 1102; Ward v. Culver, 107 N. W. 444.) The judgment should have left it to the board to determine whether the envelopes inclosing the ballots in controversy had been certified and transmitted as provided by law before directing a recount. The duties of a canvassing board are purely ministerial. (Davis v. Grunig, *supra*; State v. Mackenzie, 86 N. W. 231; Hughes v. Parker, 65 Pac. 265; People v. Stuart, 64 Pac. 285; Gibson v. Twaddle, 81 Pac. 727.) When returns do not come to the board authenticated and safeguarded according to law it is the duty of the board to disregard them.

The law requires that the identical ballot of the voter, and the identical returns of the election officers shall be

preserved to the court or other body charged with the contest or recount or canvas.   It is not permitted the board of canvassers to indulge presumptions.   The statutory provisions for the verification and transmission of election returns is mandatory so far as the canvassing board is concerned.   (Cases cited *supra*;  Lehman v. Pettingell, 89 Pac. 48;  *In re.* Stuart, 24 App. Div. (N. Y.) 201;  State v. Board, (Mont.) 31 Pac. 879.)

What constitutes the returns of the ballots of absent voters under Chapter 88, Laws 1905?  We think it indisputable that the affidavit provided for in Section 3, and which is required to be inclosed with the ballot, is a constituent part of the returns, which the canvassing board should examine and consider, and without which it would be its duty to disregard such returns.   (State v. Board, (Mont.) 31 Pac. 879.)   The affidavit constitutes a paper in the nature of a poll book.   (Board v. Board, 61 Kan. 796;  Hughes v. Parker, (Kan.) 65 Pac. 265;  State v. Board, 31 Pac. 879.)   It was, therefore, error to sustain the demurrer upon the issues raised by the return of the board since an investigation of facts was necessary to establish the genuineness and integrity of the returns.   (Fishback v. Bramel, (Wyo.) 44 Pac. 840;  Farrell v. Larson, (Utah) 73 Pac. 227;  Andrews v. Carney, 41 N. W. 923;  Rohde v. Steinmetz, 55 Pac. 814;  Perkins v. Bertrand, 61 N. E. 406;  Andrews v. Logan, *supra*;  DeLong v. Brown, 113 Ia. 370.)   The principle requiring evidence of the genuineness and integrity of ballots and other returns, while pertinent in contest cases applies also to a recount by a canvassing board.   (Andrews v. Carney, *supra*;  Keith v. Wendt, *supra*;  Pound v. Board, 79 N. W. 114;  Averyt v. Williams, 76 Pac. 463.)   The rule requiring a showing as to the genuineness and integrity of ballots applies to other parts of the returns.   (Rummel v. Dealy, 84 N. W. 526;  Lehman v. Pettingell, *supra*;  Hughes v. Parker, *supra*;  State v. Board, 31 Pac. 879;  Davis v. Grunig, *supra*.)   In the case at bar, therefore, the court should have found on

the facts from evidence, and could not determine the facts upon demurrer. (Balch v. Arnold, 9 Wyo. 17; Andrews v. Carney, *supra*; Edwards v. Logan, *supra*.) For cases analogous to the one at bar see as to the preservation and authentication of ballots, Struss v. Johnson, 38 S. W. 680; Anderson v. Likens, 47 S. W. 867; Stafford v. Board, 50 S. E. 1016; Dent v. Board, 32 S. E. 250; Perkins v. Bertrand, 192 Ill. 58; Dooley v. Van Hoenstein, 170 Ill. 630; McMann v. Crockett, 80 N. W. 136; Mentzer v. Davis, 109 Ia. 528.

The fact that the votes were not challenged as provided in Section 5 did not entitle them to be counted, for the vote stands challenged by statute, it being necessary for the absent voter to present proof and make an affidavit before he may vote. (Cusick's Appeal, 10 L. R. A. 228; Wolcott v. Holcomb, 97 Mich. 361; Reynolds v. May, 58 N. W. 483; Stinson v. Sweeney, (Nev.) 30 Pac. 997; Huston v. Anderson, (Cal.) 78 Pac. 626; Broding v. Williams, (Or.) 61 Pac. 858; Gill v. Shurtleff, (Ill.) 56 S. E. 164; Patterson v. Hanley, (Cal.) 68 Pac. 821.)

Persons desiring to avail themselves of the privilege of voting in other precincts than their own under the statute of 1905 must comply strictly with the statute. The provision for enclosing and returning the affidavit required by Section 3 is mandatory, and the presence of such affidavit was necessary to authorize the ballot to be counted by the board. (37 N. W. 757.) It is the duty of the voter as well as the election officer to see that the statute is complied with. (Orr v. Bailey, 80 N. W. 495; People v. Board, 14 L. R. A. 624.) Six of the voters in question, as shown by the affidavits inclosed with the ballots, stated in their affidavit that they resided in precincts where prior registration was required, yet they voted in disregard of the statute. (State v. Hilmantel, 21 Wis. 566.) If the board should be required to count every ballot that is mailed to the county clerk it would open the door to great fraud. There was neither a name nor an initial of the judge upon one ballot as re-

quired by law. (Orr v. Bailey, *supra*.; Kelly v. Adams, 55 N. E. 837.) The indorsement upon the envelope containing this ballot did not designate the person signing it as judge of the election. It is, therefore, submitted that none of the ballots complied with the law and for that reason the board of canvassers having only ministerial duties to perform had no alternative but to reject the ballots from the count.

The Kansas case of Sharpless v. Buckles, 70 Pac. 886, though rendered upon a similar statute assists but little, if any, in a determination of the questions here involved. The court will not compel a canvassing board to perform a useless or illegal act. (State v. Schnitger, 95 Pac. 698; Appel v. State, 9 Wyo. 187; State v. Rodman, 43 Mo. 256.) Plaintiffs in error allege that the 13 ballots rejected were illegal and this is admitted by the demurrer. The judgment, therefore, requires the board to perform an illegal act.

If the decision of the board is erroneous an election contest is the proper remedy. (State v. Marlow, 15 O. St. 114; State v. Stuart, 26 O. St. 216.) Mandamus will not be granted where a relator has another adequate remedy at law. As shown by the return of the board they had completed their labors and arrived at a result of the canvass. At the time the alternative writ was issued it was unknown what action the board would take in regard to the present vote. Immediately upon the declaration by the board of the election of Hilands to the office of sheriff, the relator had a right to contest the election. Neither the right to contest nor the right to mandamus existed until such time as the board by their final determination had completed their labors and had no intention of including the 13 rejected ballots as valid returns. (State v. Hamilton, 97 Ala. 107; High Ex. Leg. Rem., Sec. 36; Orman v. People, 71 Pac. 430.) In mandamus proceedings the decision of the canvassing board is conclusive. (McCrary on Elections (4th Ed.), Sec. 417; Park v. Stevens, 5 Hill 616.) Upon the

completion of the duties prescribed by law a canvassing board is *functus officio*, and cannot act again or further. (Gibson v. Twaddle, 81 Pac. 727; Rosenthal v. Board, 33 Pac. 129; Rice v. Board, 32 Pac. 134; Clark v. Buchanan, 2 Minn. 346; McCrary on Elections (4th Ed.), Sec. 268; People v. Supervisors, 12 Barb. 217; People v. Hanes, 90 N. Y. Supp. 61; People v. Schiellein, 95 N. Y. 133; Hadley v. Mayor, 23 N. Y. 603.)

In the case at bar the act complained of is the rejection of ballots by the board while acting in their dual capacity of judges and clerks of election. Previous to this canvass the ballots had not been passed upon by any officer. The board acted as inspectors and judicially. The relator seeks to compel the board to act in a particular way. They can only be compelled to act, allowing them to exercise their judicial discretion as to how they shall act. (State v. Board, 7 Wyo. 478.) The board should not be compelled to do that which is illegal but for the court's order. (State v. McFadden, 65 N. W. 800; Bennett v. Barber, 4 Wyo. 57.) The board has greater powers under the act of 1905 in counting the votes of absent voters than when acting upon precinct returns. (Dalton v. Richardson, 43 O. St. 652.) Mandamus is granted only to compel action, not to govern decision. (Dalton v. Richardson, *supra*; State v. Board, 7 Wyo. 478; State v. Hamilton, 97 Ala. 107; State v. Bailey, 7 Ia. 390; Corbett v. Taylor, 57 Atl. 303; Warner v. Meyers, 4 Or. 72.) It has been the practice in the various counties to reject all ballots where the affidavits required by law to accompany the ballots are not inclosed with them, and unless clearly wrong this practice should not be overthrown. (Parvin v. Weinberg, 15 L. R. A. 775.) The election returns are not to be considered by the board unless received in the manner prescribed by statute. (State v. Randall, 35 O. St. 84.) A ballot that does not contain the official indorsement should not be counted. (Slaymaker v. Phillips, 5 Wyo. 453.) The alternative writ did not forbid the board to complete the canvass and declare the result. (Vickery v. Wilson, 90 Pac. 1034.)

*McMicken & Blydenburgh,* for defendant in error.

A demurrer admits only material allegations properly pleaded, and does not admit legal conclusions nor inferences not supported by the facts set forth. (State ex rel. v. Irvine, 14 Wyo. 318; Ricketts v. Crewdson, 13 Wyo. 284.) The answer or return of the canvassing board does not present any issue of fact calling for a trial, for admitting all of the facts pleaded to be true for the purpose of the demurrer no excuse for not complying with the alternative writ is shown: This is not a case for a recount of ballots. The ballots in question have not been counted and the only question is whether it is the duty of the board to include them in their original count and abstract. Each envelope returned as the vote of an absent voter is a separate return. When the board opened the envelopes they decided by that act that the return in each case was sufficiently identified and authenticated. It is the duty of a board of canvassers to receive and count all returns sent to them not obviously spurious, however false and fraudulent they may be in fact. Their duties are confined to a mathematical calculation and they have no authority to hear evidence upon any matters of discretion. (15 Cyc. 381.)

The certificate on the back of the envelope inclosing the vote of an absent voter takes the place of the certificate required of the judges and clerks of election in case of precinct returns. The affidavit inclosed in the envelope cannot be considered as a part of the returns to be examined as a condition to counting the ballot. If the law so contemplated it would not have been provided that a challenge should be passed on without opening the envelope. The affidavit is returned for the same reason apparently that other affidavits taken by voters are required to be returned. If the board can examine an absent voter's affidavit and reject his vote for some informality, then with as much reason the board should examine every package of affidavits sent in with precinct returns. If the board should do this they could not complete their labors within the time prescribed.

When the envelopes are opened it is the duty of the board then to count the ballots. The board does not sit in a judicial capacity, and it is no part of their duty to decide whether the judges of election received the ballot without authority of law. The judges of election are the officers to decide whether the ballot of an absent voter shall be received. The duties of the board are purely ministerial and they have no jurisdiction to pass upon alleged irregularities of election officers. So far as the board is concerned if the return is properly authenticated, showing that it has come from the proper officers and in the regular way, the board has nothing to do with prior irregularities in the election. (Kendall v. LeBert, 23 Colo. 385; Sharpless v. Buckles, 70 Pac. 887; McCarthy v. Wilson, 82 Pac. 245; McDonald v. Marrow, 26 S. E. 132; State v. Tanzey, 32 N. E. 750; Gatling v. Boone, 3 S. E. 392; Board v. State. 24 Fla. 55; Cerrini v. DeLong, 94 Pac. 582; Dalton v. State, 43 O. St. 652; State v. County Judge, 7 Ia. 187; In re. Strong, 20 Pick. 492.) It is, therefore, no part of the duty of the board to pass upon the validity of the votes received by the judges of election.

Although the constitutionality of the law was the only question involved in the Kansas case of Sharpless v. Buckles, supra, involving a statute from which the statute of this state was probably taken, yet in that case the Kansas court stated that it was not within the power of the board to pass upon the validity or invalidity of the votes, or to declare the law valid or invalid. See also Rosenthal v. Board, 50 Kan. 888. The act sought to be commanded in this suit is neither illegal nor useless. The court in a mandamus proceeding can regard only that which the canvassing board could regard. It is not like a contest case. The act of the board declaring the election of Hilands as sheriff was in reality a void act, and clearly did not prevent a judgment ordering a peremptory writ. It is not a question in this case which candidate was elected, but whether or not the votes in question shall be counted. (State v. Board, (Mont.)

31 Pac. 883.)    It is not true that the board considered the ballots.  They did not consider them because the only consideration permitted was to count them.  The canvassing board can be compelled to reconvene and perform their duty.  (State v. Board, 31 Pac. 880;  State v. Trimbell, 41 Pac. 183;  Tanner v. Dean, 33 S. E. 835;  Kimerer v. State, 29 N. E. 178;  15 Cyc. 383.)    It is well settled that where a board has refused to canvass any of the votes, it can be compelled to do so by mandamus, even though it has adjourned *sine die,* and there can be no difference in principle in a refusal to canvass any and a refusal to canvass only a part of the returns.  The fact, if it be a fact, that since the passage of the act canvassing boards have placed a construction upon the statute permitting them to reject the votes of absent voters when not accompanied by affidavits required to be taken when voting, does not bind the court in deciding this case, nor is it even persuasive.  There have been but two elections since the act was passed, and if election boards have acted wrongly in the past, that constitutes no reason for permitting them to continue doing so.  A mere irregularity in the manner of transmitting the returns will not authorize their rejection.  (15 Cyc. 377.)    The recent statute of 1907 amending the law as construed in the case of Slaymaker v. Phillips, 5 Wyo. 453, made such a material change in the law that a ballot not officially stamped cannot now be held to be void.  The purpose of the amendatory act of 1907 was clearly to avoid the effect of the previous statute which by its mandatory language was held to disfranchise voters when the judges of election had not officially stamped or indorsed the ballot.  Under the statutes as they are at present a ballot not containing the initials or indorsement is not to be rejected merely for that reason.

Many of the statements contained in the answer or return of the board are either legal conclusions or denials of legal conclusions.  An answer or return in mandamus must be specific and it is not sufficient to merely state or deny

conclusions of law. (26 Cyc. 454-456.) The statute is mandatory in requiring the board after opening the ballots to count all of them. To permit them to reject any ballot because of the absence of the voter's affidavit would be to allow them in secret session to reject a vote not challenged, without any right of the voter or other persons to be heard, and upon a mere presumption that the voter had not complied with the law. It is no part of the duty of the absent voter to see that his affidavit is properly inclosed and returned with his ballot. (Hudson v. Anderson, 78 Pac. 631; Peabody v. Burch, 89 Pac. 1017.) And generally the failure of election officers to perform their strict duty in receiving and returning votes will not justify the canvassing board in rejecting them. (Johnson v. State, 27 N. E. 422; State v. Mason, 88 Pac. 126.) The peremptory writ was, therefore, properly granted.

POTTER, CHIEF JUSTICE.

This case comes to this court on error from a judgment of the district court sitting within and for Carbon County, granting a peremptory writ of mandamus requiring the county canvassing board of said county to assemble and convene and proceed to count and record and enter upon the proper poll sheets as required by law, 13 ballots cast by electors of said county who were absent from their polling precincts on the day of election, viz.: Nov. 3, 1908, which ballots were returned to the clerk of said county and had been opened by said canvassing board, and to include the result of said count in the abstract of votes cast for the office of sheriff. The judgment and peremptory writ required said board to assemble and convene on the 9th day of December, 1908, at the hour of 10 o'clock a. m., and to make known to said district court the manner of their execution of said writ on the 10th day of December, 1908. The suit was brought in the name of the State on the relation of D. B. Campbell, said relator having been a candidate for the office of sheriff of such county at said general election.

The ballots in question were cast in precincts other than the one in which the voters respectively resided, under the provisions of Chapter 88 of the Laws of 1905. Section 1 of said act provides that any qualified elector of the state unavoidably absent on the occurrence of any general election from his county or precinct because of the requirements of the duties of his occupation or business, may vote for county, district or state officers, members of the legislature, members of congress, and electors of president and vice president of the United States "in any precinct where he may present himself for that purpose on the day of election, under the regulations hereinafter prescribed."

The remaining provisions of the act involved in the consideration of the questions presented are as follows:

"Sec. 2.   Such elector must obtain from the registration officers of the precinct in which he is entitled to vote a certificate showing that such elector is entitled to vote, giving the name and residence of such elector, also the number of the registration as appears upon the registration books of such precinct, and if any elector so applying to vote whose place of residence is in a precinct where prior registration is by law not required, then such elector must furnish such judges of election his affidavit taken before the county clerk of his county, which affidavit shall show the name of such elector, his business and occupation, his place of residence and that such residence is located in a precinct where prior registration is not required by law."

"Sec. 3.   The voter so entitled to vote shall present himself at the polls in any precinct in the state where he may be on such election day, and during voting hours, and make and subscribe before one of the judges of election, an affidavit in substance as follows:

"The State of Wyoming, County of........., ss.

"I, .............., do solemnly swear (or affirm) that. I have actually, and not constructively, been a bona fide resident of the State of Wyoming one year, and of the County of............. sixty days next preceding this date; that

I am an actual resident of Polling Precinct No......, in Election District No......, in said county (or in the city of.............), and am in all respects a duly qualified elector of said county and precinct; that I am a.........., and that because of my duties (or occupation or business) as such.............., I am required to be absent from my county (or precinct) on this day, and have not had and will have no opportunity to vote there; and that I have not voted elsewhere at this election."

"Any judge of election in any precinct in this state is hereby authorized to administer the oath and take and certify such affidavit. Thereupon the affiant shall be given a blank official ballot, as in the case of a resident voter, and shall mark the same as any resident voter may, and shall fold the same and hand it to the judges, as in the case of a resident voter, but such ballot shall not be deposited in the ballot box nor entered on the poll books. It shall, together with said affidavit, be securely sealed in an envelope, upon the back of which one of the judges shall write: 'The ballot of:......, an absent voter of Polling Precinct No......, in Election District No......, in the County of............. (or in the City of.............),' which shall be signed by one of the judges, a copy of which affidavit the said judges shall retain with the other affidavits and papers in connection with their duties as such."

"Sec. 4. All such envelopes shall, by the judges of election, be mailed to the county clerks of the county where such elector claims residence not later than the next succeeding day."

"Sec. 5. The said county clerk of the county in which said absent voter resides shall receive said ballot, and shall safely keep and preserve the same unopened in his office until the county canvassing board meet to canvass the vote according to law, at which time, at two o'clock in the afternoon of the first day of the meeting of said canvassing board, any two electors, residents of the precinct in which such elector claims residence, may appear before said can-

vassing board and challenge such voter's right to vote at
such election.   When such elector shall establish his right
to so vote to the satisfaction of said canvassing board in
accordance with the election laws of Wyoming.   Should no
such challengers appear during the first day of meeting of
said board, they shall not be permitted to so appear there-
after, should the contention of such challengers be by said
board sustained, then said sealed envelope shall be returned
to said elector, and the said county canvassing board, in the
presence of said county clerk and no other person, shall
open all envelopes not so challenged and record the said'
ballot upon the poll sheet of the proper precinct or district
in their possession, in the same manner as clerks of elec-
tion record votes, and in so canvassing said vote the said
canvassing board shall count the votes of all absent voters
taken as herein provided, and add the same to the total of
the poll sheet, in arriving at the total result of the election
in the precinct, or election district, where said voter re-
sides."

"Sec. 6.   Said ballot, when so opened by the canvassing
board, shall be sealed in an envelope with the endorsement
thereon:  'Vote of absent voter of Polling Precinct No....,
in Election District No......, in the County of..........
(or in the City of..............),' and the same shall be
kept in the county clerk's office as other ballots are kept
until destroyed according to law; and in case of a contested
election the same may be counted and opened as in other
cases.   The said board of canvassers and the county clerk
of each county wherein any vote of any absent voter is re-
ceived, as herein provided, shall keep the fact of such vote
and persons for whom the same is recorded and contents
thereof secret and shall not reveal or divulge the same."

The petition alleges the occurrence of a general election
on the 3rd day of November, 1908, for the election of county
officers of said county, and among others the office of sheriff.
That the relator was the regularly nominated candidate of
the Democratic party of said county, for said office, that his

(13)

name appeared as such candidate on the official ballot used at the said election in such county and that Walter S. Hilands was the regularly nominated candidate of the Republican party for said office and that his name also appeared on the official ballot; and that the relator and said Hilands were the only persons voted for for the said office in said county at said election. That the defendant, John Pratley, is the duly qualified and acting county clerk of said county, and that the defendants Jacob Waeckerlin and William J. Smith are duly qualified and acting justices of the peace in and for said county; that the said county clerk did on the 16th day of November, 1908, take to his assistance the two said justices of the peace, and the three said defendants were then constituted as the county canvassing board to canvass the returns and make abstract of the votes cast at said general election, and thereupon proceeded to open said returns and to tabulate the votes cast in the various precincts in said Carbon County; "and that said canvassing board have not yet finished their labors as such board or completed the canvass of the votes or the making of the abstract, but merely now stand in recess subject to be called together by the said county clerk to complete their said labors."

The petition further alleges that at said election votes were cast by twenty-three legal voters of said Carbon County at precincts other than those in which said elector resided "in accordance with the provisions of Chapter 88 of the Session Laws of the State of Wyoming, passed by the Eighth State Legislature, generally known as the Session Laws of 1905, and said ballots so cast by said absent voters were sealed in envelopes and transmitted to and received by the said John Pratley, county clerk of Carbon County." That no challengers appeared during the first day of the meeting of said canvassing board as provided in Section 5 of said act, "and thereupon upon the second day of the session of said Board, to-wit: on the 17th day of November, 1908, the said defendants so sitting as a board of county canvassers

proceeded to open the envelopes containing the ballots cast by the said twenty-three absent voters, each of said ballots being a legal and lawful ballot." That at said election the returns from the various precincts, excluding all the ballots cast by the absent voters, aforesaid, show that the relator received 1,551 votes for the office of sheriff, and that said Hilands received 1,550 votes for said office. That said canvassing board on the day last mentioned, after having in secret session opened all of the envelopes containing the ballots voted and returned as the votes of absent voters, proceeded in secret to count nine only of said twenty-three ballots, and unlawfully refused to count the other fourteen ballots so received, "all of which said fourteen ballots were lawful ballots and should have been counted." That from the count of the said nine ballots three votes were given to the relator by said board and five votes to the said Hilands, "thereupon defeating the relator for the office of sheriff on the face of the returns, including the nine votes of absent voters counted, by one vote."

It is then alleged as follows: "that the relator, although given no oportunity whatever to examine any of the said fourteen ballots which the said defendants refused and still refuse to count, so that he cannot positively say for whom each of the said ballots for the office of sheriff were cast, still he has reason to believe and does believe that a majority of said ballots were cast for him, the said D. B. Campbell, and against the said Walter S. Hilands for the office of sheriff of Carbon County, and that if said fourteen ballots were counted by said defendants as such county canvassing board, the said relator, D. B. Campbell, would be shown to have received a majority of all of the votes cast at said election, both those regularly returned from the various precincts in Carbon County and those cast by the absent voters as aforesaid, and would be entitled to receive the certificate of election to the office of sheriff of Carbon County."

It is alleged that said defendants intend to speedily make abstract of said votes cast at said election, including the

nine votes counted as aforesaid, without including the said other fourteen votes cast as aforesaid, and then to speedily adjourn, and that they will so adjourn without counting or including said fourteen votes in said abstract, unless compelled to count and include the said votes by a writ of mandamus, and that unless commanded to count and include said fourteen votes, said board will issue to the said Hilands a certificate of election to the said office of sheriff. An alternative writ was issued on the 19th day of November, 1908, commanding the said defendants as said county canvassing board to immediately assemble and convene and count and enter upon the proper poll books the 14 ballots cast by electors of Carbon County, absent from their polling precinct and returned sealed to the county clerk of said county, which they had refused and neglected to count and that they include the result of said count in the abstract of votes cast for the office of sheriff, or show cause to the contrary on the 28th day of November at the hour of 10 o'clock a. m. of that day.

On the 20th day of November, 1908, the defendants filed a motion that the petition be made more definite and certain, and on the 3rd day of December, 1908, by leave of court, withdrew said motion and filed a return to the alternative writ, and thereupon, on the same day the relator filed a demurrer to said return which was regularly heard upon that date and on the following day, December 4, 1908, said demurrer was sustained, to which ruling the defendants excepted. Thereupon, the defendants elected to stand upon their return, and refused to further plead, and an order was entered for a peremptory writ to issue, to which ruling also the defendants excepted, and such writ was thereupon issued.

The petition in error was filed in this court on December 7, 1908, and thereupon an order was made by the chief justice staying execution of said judgment and writ upon certain terms unnecessary to mention, which terms were complied with.

The return of the defendants to the alternative writ, a demurrer to which was sustained, admitted the holding of the general election as stated in the petition, the candidacy of the relator and said Hilands for the office of sheriff of said county, that the defendants as county clerk and justices of the peace, respectively, constituted the county canvassing board of Carbon County; that as such board they proceeded to open the returns and to tabulate the votes and to make abstract of the same on November 16, 1908; and that at the time of the issuance of the alternative writ they had not completed the canvass of the votes nor the abstract thereof.   The return denied that votes were cast by twenty-three legal voters of said county at precincts other than those in which they resided, but alleged that votes were cast by twenty-two persons, and the votes so cast were voted at precincts other than those in which the said persons so voting claimed to reside.   That said twenty-two ballots so cast were sealed in envelopes and received by the county clerk was admitted, but it was alleged that three of said ballots were not transmitted to the said clerk in the manner provided by law, but that on the contrary two of them were sealed, mailed and delivered to one William Platt as county clerk, "when in truth and in fact the said William Platt occupied and now occupies the official position of county treasurer of said Carbon County"; that the other of said three ballots was delivered by a courier in person and not forwarded as by law directed.   The return admitted that no challengers appeared during the first day of the meeting of the board as provided in Section 5 of the act aforesaid, but alleged that one who acted as inspector for the Democratic party appeared before said canvassing board on the first day of the session thereof and challenged five certain ballots received by the county clerk for certain stated reasons, viz:   that the envelope alleged to contain each of said five ballots was not properly endorsed in that neither the number of the polling precinct nor election district of the absent voter is given in the cer-

tificate upon the back of said envelope, and that said certificate does not state where the ballot was cast, and is not signed by any officer of election, and further, that the ballot of each person so challenged was not accompanied by affidavit taken before the county clerk, giving his place of residence and stating that he resided in a polling precinct where prior registration was not required, and was not accompanied by a certificate of any registry agent for Carbon County for the last general election, certifying that said person so voting is a qualified elector of any particular precinct of Carbon County.

It was admitted by the return that on the second day of the session the said canvassing board proceeded to open the envelopes containing the said ballots cast by the said twenty-two persons, but it was denied that each of the envelopes so opened contained a legal and lawful ballot. The return then alleged that at the time of the issuance of the alternative writ the defendants were without knowledge as to whether the relator and the said Hilands received the number of votes stated in the petition, but that said defendants as such canvassing board had not then completed its duty of canvassing the returns, there still remaining uncanvassed the returns of four precincts. It was further alleged that the defendants as such county canvassing board on the 17th day of November, 1908, proceeded in secret session as required by law to open all the envelopes received by the county clerk, to-wit: the twenty-two envelopes received by the county clerk which were presumed by the clerk to have been returned as containing and to contain the ballots of absent voters; that nine of said envelopes so opened were found by said board to contain ballots cast in accordance with the provisions of Chapter 88 of the Laws of 1905; that said board duly inspected and considered the remaining thirteen votes alleged to have been cast by absent voters at precincts other than those of their residence, "and upon careful inspection and consideration of those ballots these defendants found that the said

ballots and each of them were unlawful, illegal and void
for the following among other reasons, to-wit": The rea-
sons set forth in the return upon which the said thirteen
ballots were found to be unlawful, illegal and void are in
substance as follows:

That one ballot was not accompanied by a certificate
from the registry agent of any election district in Carbon
County where prior registration was made as by law re-
quired, nor was there any affidavit accompanying said bal-
lot from the county clerk of said county as is required by
law in the case of an elector applying to vote whose place
of residence is in a precinct or district where prior regis-
tration is not required, nor was affidavit made and sub-
scribed to before the judges of election or any of them by
the person applying to vote setting forth the facts as re-
quired by Section three of said act, but said ballot was ac-
companied by an affidavit required by law to be made by a
person voting in his own precinct where prior registration
is not required by law.

That six of the thirteen ballots were unaccompanied by
either a certificate or affidavit from the county clerk or any
registry agent of Carbon County as required by Section 2
of the act aforesaid, or by any affidavit of the person voting
as required by Section 3 of said act, but that each of said
six ballots was accompanied by an affidavit which is re-
quired by law to be made by a voter in a precinct where
registration is by law required who was unable to register
during the last period of registration by reason of absence.

That four of said ballots were not accompanied by af-
fidavits taken before the county clerk of Carbon County
or by certificates from any board of any registry agents
as required by Section two of said act of 1905, nor any af-
fidavit as required by Section 3 of said act, but that each
of said four ballots was accompanied by an affidavit from
judges of election in the precinct in which said ballots
were supposed to have been cast, setting forth in said affi-
davits that said persons so voting were *bona fide* electors

of Carbon County, which affidavits did not set out the precincts of Carbon County in which said voters were entitled to vote nor any other allegation except as above stated.

That upon the envelope containing one ballot the signature to the statement endorsed thereon was not followed by the words "Judge of Election," and that said envelope was delivered to the county clerk by a courier in person and not by mail as required by Section four of the act of 1905; that the ballot contained in said envelope had what was presumed to be the official endorsement printed on the back thereof as provided by Section 336 of the Revised Statutes of 1899, but not the name or initials of any judge of election, either directly under the endorsement or otherwise.

That one ballot was unaccompanied by any certificate or affidavit from the county clerk or from any board of registry agents of said Carbon County, or any affidavit whatever.

Following a statement of the reasons upon which said thirteen ballots were found unlawful, illegal and void, it was alleged in the return that the said canvassing board, by unanimous vote, rejected said thirteen ballots and each of them, and declared that they ought not to be counted as legal votes, and that thereupon each of said thirteen ballots was excluded from the count of said canvassing board. It is admitted that from the canvass and count of the nine absent votes made by said board Walter S. Hilands received five and the relator three votes.

It was further alleged by the return that the defendants proceeded to complete the canvass of all the election returns made from the various precincts of Carbon County by said absent voters and to tabulate and make an abstract of said votes, and that thereupon it appeared to said canvassers, and they so found that Walter S. Hilands received the largest number of votes for the office of sheriff and that he was thereupon declared by said board to be duly

elected to said office and a certificate of election was issued and delivered by said county clerk to said Hilands upon due demand being made by him, and that said board finally adjourned on the 25th day of November, 1908; and that it has been the practice and custom of county canvassing boards throughout the state, since the passage of the act known as Chapter 88 of the Session Laws of 1905, to reject all ballots irregular upon their face or unaccompanied by certificates and affidavits duly prepared and acknowledged in accordance with the provisions of said chapter.

It thus appears that after the canvassing board had opened the envelópes containing the twenty-two ballots referred to, and counted nine of them, giving to the relator three of the votes so counted and the opposing candidate five, and before the completion of their labors as such board, the alternative writ was issued; and by the return of the sheriff endorsed upon such writ it is shown that it was served on the date of its issuance upon two of the members of the board, viz: the two justices of the peace, and on November 23, 1908, upon the county clerk. It also appears by the return of the defendants to the writ that they did not finally adjourn until November 25, 1908, and that they then adjourned without counting and including in their canvass and abstract either of the thirteen ballots in dispute. Without counting said thirteen ballots, or any of them, Hilands was found and declared to be elected, and a certificate of election was issued to him. The demurrer to the return challenged the sufficiency of the reasons set forth therein for the neglect and refusal of the board to count said ballots and include such count in their abstract of the votes cast at said election for the office of sheriff. The question here, therefore, is whether the demurrer was or was not properly sustained. It may be conceded arguendo, as contended by counsel for plaintiffs in error, that if the reason given for excluding any one of the contested ballots is good the demurrer should have been overruled.

The county clerk, to whom the envelopes containing ballots cast under the provisions of the act of 1905 are

required to be sent, is the officer designated by law to receive all precinct returns in his county, and he therefore becomes the custodian of all the returns to be considered by the county canvassing board. The general duty of the canvassing board is prescribed by statute enacted prior to the passage of the act of 1905. On the fifteenth day after the close of any county or general election, or sooner, if all the returns be received, the county clerk, taking to his assistance two justices of the peace of his county, is required to proceed to open the returns and make abstracts of the votes in the following manner: "An abstract of votes for presidential electors, state officers, justice of the supreme court, representative in congress and district judge shall be on one sheet, and an abstract of votes for members of the senate and house of representatives shall be on another sheet, and an abstract of the votes for county and precinct officers shall be on another sheet, each of said abstracts shall be signed by the county clerk and the two justices, and the county clerk shall immediately make out a certificate of election to each of the persons having the highest number of votes for county and precinct officers, respectively, and deliver such certificate to the person entitled to it on his making application for the same to the clerk at his office." (Rev. Stat. 1899, Sec. 347.) In canvassing the returns the vote of every precinct, returned within fifteen days after the election, to the county clerk is required to be counted, and it is provided that the canvassers shall not throw out the vote of any precinct so returned. (Id. Sec. 348.)

The votes cast and deposited in the ballot box in any precinct by resident voters are counted by the judges and clerks of election at such precinct. (Id. Sec. 340.) When such votes have been examined and counted the clerks are required to set down in their poll books the total number of persons voting in such precinct; the name of every person voted for, the office for which such person received such vote, and the number he received. It is provided

that such entry shall be made "substantially" in the following form: "At an election held in Polling Precinct No..... in Election District No..... in ............. County, Wyoming, on the ...... day of .............., A. D. ........., the total number of persons voting was ........., and the following named persons received the number of votes annexed to their respective names for the following offices: (Here insert names of candidates voted for with office and number of votes received, the number of votes received in each case to be spelled out in full as well as written in figures.) Certified by us." The entry is then to be signed by the judges of the election and attested by the clerks, and dated. (Id. Sec. 342.) One of the poll books is then required to be enclosed and sealed by the judges, together with all the ballots cast and affidavits of electors concerning the qualifications of persons voting, all ballots returned by voters as spoiled and all ballots not cast, accounting for those posted about the polling place as by law required, and directed to the county clerk. (Id. Sec. 343.) The counted ballots are required to be strung upon a strong thread or twine in the order in which they have been read by the judges, and delivered with the poll books to the county clerk, who must carefully preserve the ballots for six months, or longer in case of a pending contest requiring them as evidence. (Id. Sec. 344.) Though the statute requires precinct returns to be mailed to the county clerk, it is provided that informality in their delivery shall not invalidate the vote of any precinct in the absence of fraud. (Id. Sec. 345.)

When a person offering to vote at an election is challenged he cannot vote until he shall take a prescribed oath to the effect that he is a qualified voter, and also deliver to the judges of election an affidavit of two qualified electors of that precinct, stating certain prescribed facts, to the effect that the person so offering to vote is qualified. After the name of such a person who has voted the clerks are required to write on the poll list the word "sworn," and

the names of the electors making affidavit to his quali-
fication. (Id. Secs. 322, 323, 324.) Provision is also made
for receiving the vote of an unregistered person where the
failure to register was caused by absence or sickness, but
before such a person's vote can be accepted he is required
to make a prescribed affidavit corroborated by the affidavits
of two qualified electors of the precinct showing his quali-
fication and the reasons for not registering. (Id. Sec. 327.)
And in precincts where registration prior to election is
not required every person offering to vote must take and
subscribe the same oath required of persons applying to
be registered, to be administered by one of the judges of
election, and that affidavit is required to be returned by the
judges with the poll lists. And, further, in such case,
the clerks at each such precinct are required to enter on
the poll list in columns prepared for that purpose, opposite
the name of each person voting, the same statement or
minute required to be entered by registry agents in the
registration lists. (Id. Secs. 273, 276.)

We do not understand it to be contended that in making
abstracts of the votes shown by precinct returns the can-
vassing board is authorized to examine and recount the
ballots returned by the election officers, or to go behind
the entry made in the poll books showing the result of the
count of the votes as made by the judges and clerks. Nor
that it is any part of the duty of the board as to precinct
returns to examine and pass upon the sufficiency of the
affidavits of challenged or unregistered voters, or those of
voters in precincts where prior registration is not required,
although such affidavits are required to be sent with the
poll books to the county clerk. The board must, of course,
determine upon the genuineness of the returns. In other
respects their duty as to precinct returns is merely min-
isterial, requiring a setting down of the number of votes
returned as cast in the various precincts for the different
offices, or upon questions that may have been submitted,
and calculating the total of such votes. (15 Cyc. 379; 10

Ency. L., 2nd Ed., 746; McCrary on Elections, 4th Ed., Sec. 261.)   It is, however, insisted on behalf of the canvassing board that under the act of 1905, in relation to the ballots cast and returned by authority thereof, the board is vested with a larger discretion than in other cases, since they instead of the judges receiving such ballots are required to count them.   All the ballots in controversy were rejected and excluded by the board after opening the envelopes containing them, respectively, and the chief ground upon which most of them were excluded is that the envelopes did not contain in addition to the ballot the affidavit required by Section 3 of the act to be made by the voter before receiving an official ballot from the judges, and to be enclosed with the ballot.   It is argued that the making and subscribing of the affidavit prescribed by Section 3 of the act, which is required to be enclosed with the ballot and sent to the county clerk of the proper county, is mandatory, and that unless such affidavit accompanies the ballot, the board is authorized to reject it and exclude it from the abstract of votes cast.   Restating briefly the facts in this respect as alleged by the return to the writ, it appears that one of the rejected ballots was unaccompanied by any affidavit, while others were accompanied by an affidavit, but not the one required by Section 3.   The affidavit enclosed with several of the ballots in dispute is alleged to have been such an affidavit as the statute provides to be furnished by an unregistered voter in precincts where prior registration is required, showing his qualification to vote in that precinct and his failure to register during the last preceding registration period on account of absence or sickness.   Other ballots, it is alleged, were accompanied only by an affidavit required of voters on election day at their own precincts, where prior registration is not provided for by law.   It is seriously contended that all such ballots were not only illegal, but that the board was authorized to reject them in making the count and abstracts. Before proceeding with the discussion of that question it

seems proper to refer to the allegations in the return of the board to the effect that none of the ballots were accompanied with the certificate or affidavit required by Section 2 of the act to be obtained or made by the elector and furnished to the judges of election.

The certificate or affidavit provided for in Section 2 is not required by the statute to be enclosed wi.h the ballot, nor is its return in any manner to the county clerk provided for. The obvious purpose of the section is to require the one offering to vote to furnish evidence to the judges of the fact of his registration or that he resides in a precinct where prior registration is not required. Since that evidence so required to be furnished to the judges of election where the vote is offered is not required to be enclosed or returned with the ballot, it is clear that the fact that it does not accompany the ballot would not justify its rejection or exclusion by the board, or the presumption that the required certificate or affidavit was not properly furnished.

The affidavit prescribed by Section 3 is required to be enclosed in a sealed envelope together with the ballot, and so sent to the proper county clerk. Upon his making that affidavit the person so offering to vote becomes entitled to receive from the judges a blank official ballot, and to mark, fold and hand the same to the judges, the same as a resident voter, assuming that he has furnished the evidence required by Section 2 as to his prior registration or his residence in a precinct where that is not necessary. The duty of enclosing the affidavit with the ballot seems to devolve upon the judges, and the failure of those officers to perform that duty ought not to be held sufficient ground for an exclusion of the ballot from the count to be made by the canvassing board, thus resulting in disfranchising the voter, unless, at least, the statute has so declared either expressly or by clear implication. To ascertain whether that result is, in such case, declared or clearly contemplated by the statute it will be necessary to consider Sections 5

and 6 of the act, together with that provision of Section 3 that the sealed envelope containing the ballot shall be endorsed as follows: "The ballot of................., an absent voter of Polling Precinct No..... in Election District No....., in the County of..............(or in the City of...............)," and that said statement shall be signed by one of the judges.

Section 5 provides in substance that the county clerk shall safely keep and preserve the envelope so received unopened in his office until the meeting of the canvassing board; that at a stated hour in the afternoon of the first day of the meeting of the board, any two resident electors of the precinct in which the elector having so voted claims residence may appear and "challenge such voter's right to vote at such election," whereupon the elector shall establish "his right to vote" to the satisfaction of the board "in accordance with the election laws of Wyoming." In case no such challengers appear on the first day of such meeting they shall not be permitted to so appear thereafter. Where such a challenge is made and sustained the sealed envelope shall be returned to the elector. That the board shall open all envelopes not so challenged "and record the said ballot upon the poll-sheet of the proper precinct or district in their possession, in the same manner as clerks of election record votes, and in so canvassing said vote the said canvassing board shall count the votes of all absent voters taken as herein provided, and add the same to the total of the poll-sheet, in arriving at the total result of the election in the precinct, or election district, where said voter resides."

Section 6 provides that when opened by the board the ballot shall be sealed in an envelope endorsed: "Vote of absent voter of Polling Precinct No..... in Election District No....., in the County of..............(or in the city of..............)," and that "the same shall be kept in the county clerk's office as other ballots are kept until destroyed according to law; *and in case of a contested*

*election the same may be counted and opened as in other cases."* After sealing up the ballot "when opened" by the board the endorsement on the envelope is not to contain the name of the voter. Like other ballots returned to the county clerk it then remains unidentified as the vote of a particular person, except that it will appear to be the ballot of an unnamed absent voter of a designated precinct. And the section seems to require every ballot "when opened" to be sealed up and endorsed as a vote of an absent voter, which is in keeping with the provision of the preceding section for recording the ballot on the proper poll sheet upon opening the envelope containing it, but not in harmony with the theory that the board may reject the vote altogether on the ground of the voter's supposed disqualification.

By the express provisions of Section 5 a challenge is only permitted in a stated manner on the first day of the meeting of the board, while the ballot remains unopened, and then only of the "voter's right to vote at such election." In the case at bar it appears that no such challenge was offered in the manner provided for. We assume that the board had the right in the first place to determine whether the endorsement upon the envelope as received by the county clerk was genuine, or whether any envelope was received in such a manner as to show fraud in its transmission. But it is evident that all the envelopes here in question were regarded as genuine returns of the votes of absent voters, since they were all opened, notwithstanding that it is alleged that the signature to the endorsement upon one of the envelopes was not followed by the words "judge of election." Whatever discretion the board had as to *opening* the ballots was exercised.

Upon opening the envelopes it became the duty of the board by express command of the statute to record the ballot upon the poll sheet of the proper precinct or district in their possession "in the same manner as clerks of election record votes," which obviously means that the names

of the voters are to be recorded as having voted. Thereupon in "canvassing" said vote the board shall "count the votes of all absent voters taken as herein provided." It is argued by counsel representing the board that such votes were "taken" when before the board for consideration. We cannot agree with that view. All votes are cast or "taken" on election day. No other time is authorized by law for receiving votes. The votes are cast or taken when delivered to and accepted by the judges of election. So far as the board is concerned in the performance of its duty in canvassing the vote, the votes are "taken as herein provided," if the envelopes received by the county clerk and placed before the board are found to be genuine and entitled to be opened. The duty of determining whether the vote shall be received rests upon the judges at the precinct where it is offered, and not upon the board in secret session. Nothing in the statute under consideration seems to be more mandatory than the duty imposed upon the canvassing board to open the envelopes appearing and found to be genuine, record the votes upon the poll sheets of the proper precincts and count and add the same to the total result of the election in such precincts respectively. While the requirement that the affidavit prescribed by Section 3 shall be securely sealed in an envelope together with the ballot and sent to the proper officer should be observed by the judges, the performance of that duty is not expressly declared essential to the validity of the ballot or the right to have it counted, but on the contrary the strong implication of the provisions of Section 5 seems to be that the counting of the ballot does not depend upon the presence in the envelope containing it of such affidavit. The provision requiring the enclosing of the affidavit with the ballot should, therefore, be construed as directory, and thus avoid the disfranchisement of a voter through no fault of his own.

It is clear we think that other or different affidavits than those prescribed by Section 3 found in the envelope with a ballot cast by an absent voter under the statute in question

are immaterial in making the canvass. It is not perceived that affidavits such as are not required to be forwarded with the ballot would constitute proper evidence upon which to base action by the board in counting or refusing to count the vote. It is argued with much earnestness that since six of the disputed ballots were each accompanied by an affidavit such as an unregistered voter is required to make and furnish in precincts where prior registration is required, it appeared thereby that the voters casting such ballots were not entitled to vote because not registered. In answer to that argument it is sufficient to say, first, that the right of the elector to vote was not challenged, and in the absence of such challenge the statute declares that the vote shall be counted by the board. If, in fact, the one who cast the ballot was not entitled to vote that can be shown in a contest before a court having jurisdiction to determine such a question upon a proper hearing. And, second, the presence of such an affidavit in the envelope, and the absence of the affidavit provided for, is not conclusive of the fact that the proper affidavit was not made. It is to be presumed, so far as this case is concerned, that the judges of election who accepted the ballot performed their duty, and had furnished to them before delivering an official ballot to the voter the required evidences of his qualification, and the prescribed affidavit; and the fact that an affidavit differing in form and substance from the one provided for in the statute accompanied the ballot does not authorize the board to conclude that it was the only one taken or that the prescribed affidavit was not made and received by the judges. The proposition contended for by counsel would allow the board in secret session, in the absence of challenge, to deny the right of franchise to the voter upon a mere inference or presumption that he was illegally permitted to vote by the judges of election. Considering the nature of the duties of the board and their limited powers, the presumption that the officers of election performed their duty in allowing the vote to be cast is safer and more just.

The ground upon which the board attempt to justify their act in refusing to count the ballots unaccompanied by the affidavit prescribed by Section 3 of the act seems to go beyond the mere fact of the absence of such affidavit from the envelope containing the ballot. It appears that the board regarded the absence of the affidavit as evidence that the voter had not taken the required affidavit, and was, therefore, not entitled to vote. Unless the requirement for enclosing the affidavit with the ballot is for the purpose of enabling the board to determine the question of the qualification of the voter, it needs no argument to show that the failure of the judges to so enclose it could not be held sufficient in itself to vitiate the ballot, where the statute has not expressly or by clear implication attached such a penalty to the omission of that duty. It would hardly be contended that the vote of a precinct could be disregarded and excluded by the board upon their ascertaining that the affidavits of challenged or unregistered voters, or voters registering on election day in a precinct where that is allowed, had not been returned with the poll books as required by law. We do not understand the purpose of the provision for returning the affidavit to the county clerk as differing from that for returning with the poll books and returns the affidavits furnished by challenged and other voters who have voted in their own precincts.

The argument that the board may upon opening an envelope containing the ballot of an absent voter determine from the fact that the affidavit is not therein enclosed that the voter was without right to vote, and on that ground exclude the ballot from their count, disregards the plain provisions of Section 5 and misinterprets the manifest intent of those provisions. When one offering to vote at his own precinct is challenged he is permitted to vote upon furnishing his affidavit and the corroborating affidavits provided for by the statute. The analogous provision of the statute in question requires a challenge to be made before the opening of the envelope and the decision of the board

upon the challenge is required to be made while the envelope remains unopened. Moreover, when such a challenge is made the voter may establish his right to vote "in accordance with the election laws." In view of such provisions we are unable to perceive that it can be held with any reason, that after a refusal to sustain such a challenge, or in the absence of the challenge provided for, the board may open the envelope and then in secret session declare the disqualification of the voter. To so hold would permit the board to delay its decision until an inspection of the ballot and a discovery of the names of the persons for whom the vote was cast. The purpose of the statute to prevent such a course of procedure is very clear. It is apparent that the provision for challenge in this statute is intended to take the place. in the case of an absent voter of the challenge otherwise provided for of a voter offering to vote in the precinct where he resides, which latter challenge is permitted when the vote is offered, and that when the challenge is not sustained or no challenge is made the vote cast is to be counted in the absence of some infirmity in the ballot itself authorizing its rejection.

In view of the statute providing that informality in the delivery of precinct returns shall not invalidate the vote of the precinct in the absence of fraud, and the general rule that in the absence of suspicious circumstances a mere irregularity in such delivery will not warrant a rejection of the returns, unless a non-compliance with the method directed by statute is expressly declared to be fatal, the objection that one of the envelopes was delivered to the clerk in person by a courier instead of by mail, and others were mailed to another officer of the county mistakenly named as the county clerk cannot be held to authorize the rejection of such votes, since there is no charge of fraud in their transmission, but on the contrary the clerk received them, and the board being evidently satisfied as to their genuineness, accepted and opened them.

It seems to be conceded by counsel, and we suppose it to be a fact, that this statute of 1905 was taken from a similar statute in Kansas.   (Laws of Kansas, 1901, Ch. 180.)  The act aforesaid contains some provisions not found in the Kansas statute, viz.:   The provisions of Section 2 requiring the presentation to the judges of election of evidence of registration or of residence in a precinct where prior registration is not required, and the provisions of Section 5 with reference to challenge.   The Kansas statute contains two sections, the provisions of which are not incorporated in our statute, and which provide penalties for certain acts and omissions, viz.:   For wilfully swearing falsely to the affidavit provided for; the permitting by the officers of electon of any one to vote without his taking the required affidavit; and the neglect or refusal of said officers, the county clerk or canvassing board to perform any of the duties prescribed by the act.   And one section of the Kansas statute provides for the furnishing by the county clerk to the judges of election of a sufficient supply of printed blank affidavits prescribed by the act.   Further than that, the Kansas statute authorizes the voting out of his precinct only by a qualified elector who is an employe of a railroad company.   In the main, however, the statutes are quite similar and in several respects identical in language.   Sections 3, 4 and 5 of our statute follow very closely the language of the corresponding sections of the Kansas statute, with the exception as above stated that in Kansas there seems to be no provision for a challenge of the votes in the presence of the canvassing board.

The precise questions here presented do not appear to have been before the supreme court of the State of Kansas under this statute, but in the case of Sharpless v. Buckles, 70 Pac. 886, that court was called upon to decide whether or not a county canvassing board could be required by mandamus to reconvene and recanvass the absent vote and to exclude such vote from their count and canvass on the ground of the alleged unconstitutionality of the statute.

The court held that it was not the duty nor within the power of the canvassing board to pass upon or determine the constitutionality of the law in question, or to exclude votes because in its judgment the law was unconstitutional.   In the reasoning which led to that conclusion, after referring to the rule that the duties of the board are simply ministerial, the court said:   "It is not, therefore, the duty, nor within the power, of the board of county commissioners (the canvassing board) to pass upon the validity or invalidity of the votes sought to be excluded."   The reasoning of the opinion in the case cited would, we think, sustain the views reached by us upon the questions above discussed.

We are aware of no statute in any other state similar to the one in question, but the decisions upon analogous questions seem to amply support our conclusions with reference to the right of the canvassing board to reject the vote for the failure of the judges of election to return with the ballot the prescribed affidavit.   Among other authorities we cite the following:   Clark v. Robinson, 88 Ill. 498. That was a contested election case in which certain votes which had been counted for one of the parties were objected to for the reason that the affidavits of the qualifications of the persons casting the votes which were received by the judges of election were defective in the particular that the persons by whose oaths the affidaivts were supported were not registered voters and householders as required by the statute.   Some of the persons were shown affirmatively to have been legal voters.   As to the others there was no evidence upon the subject.   It was held that the presumption must be, the votes having been received, that the persons were legal voters, and the court said:   "The presumption of the legality of the vote in no way depends upon the omission to challenge or object to it, or any presumed knowledge of the judges of election, but it arises from the fact of the deposition of the ballot in the ballot-box.   A vote so deposited is presumed to be a legal vote, until there is evidence to the contrary."   (Peebles v. Commissioners, 82

N. C. 385.) In that case it was held that the county can-
vassers did not have authority to go behind the registry
of voters to examine into the regularity of the action of
the registrars, and their associate judges of election, and
to strike from the roll the names of all such as they may
deem to be improperly entered, and to change the voting
lists accordingly.    (Drew v. State Canvassing Board, 16
Fla. 17, 51.)    That was a mandamus case in which the
answer of the canvassing board stated that a number of votes
were deducted from the return of votes cast in certain
counties because they were illegally cast.    The court held
that to be a question which the law did not authorize the
board to determine.    (State ex rel. v. Board &c., 17 Fla.
9.)    That was also a mandamus case in which the question
was presented of the right of the board to exclude votes
cast in a precinct on the ground that the oaths of the in-
spectors of the election returned to the clerk were irregular
and there was, therefore, no evidence that the election
board had been sworn as provided by law.    The power to
exclude such returns was denied.    In Taylor v. Taylor, 10
Minn. 107, it was held that the county canvassing board
had no power to determine whether an election in certain
townships was invalidated, where it was alleged that the
judges and clerks of election had not taken the oath re-
quired by law, nor any oath, that no list of the qualified
electors of one district had been returned, or enclosed or
transmitted with the papers purporting to be the returns of
said district, and that from said papers it appeared that there
were no register poll lists whatever at said supposed elec-
tion.    The court said:  "That was a question for judicial,
not ministerial officers—a question that could only be de-
cided by a court that could call in witnesses, hear evidence
and decide questions of law and fact."    (See also Beards-
town v. Virginia, 76 Ill. 34; Lehman v. Pettingell, (Colo.)
89 Pac. 48.)

This disposes of the grounds alleged by the board as cause
for refusing to count the thirteen ballots, except as to one

ballot upon which it is alleged the name or initials of a judge of election was not endorsed.   In support of the board's refusal to count that ballot the case of Slaymaker v. Phillips, 5 Wyo. 453, is relied on.   In that case it was held that the absence of an endorsement upon a ballot of either the official stamp or the name or initials of a judge of election required its rejection.   The decision was based upon the mandatory provisions of the statute then in force.   Those statutory provisions were subsequently brought into the revision of 1899, to which we will now refer.   Section 285, Revised Statutes of 1899, reads as follows:

"No officer shall deposit in the ballot box any ballot except a lawful one.   A lawful ballot is an official ballot officially stamped and marked with the initials or name of a judge of election."   This section has not been specifically amended.

A provision which became known as Section 334 of said Revised Statutes read at the time of the decision in the case aforesaid, as follows:   "No judge of election shall deposit in any ballot box any ballot upon which the official endorsement herein provided for does not appear."   And a provision that became a part of Section 341, and controlled the counting of votes by the judges and clerks of the election, was as follows:

"In the canvass of the votes any ballot which is not endorsed by the official stamp or has not the name or initials of the judge of election as provided in this title, shall be void, and shall not be counted."

Section 336, which remains in force, provides that before delivering any ballot to an elector the judges shall print on the back and near the top of the ballot with a rubber or other stamp provided for that purpose the designation "Official Ballot," and certain other words required by Section 290, designating the county, precinct, date of election, and the name and title of the clerk who furnished the tickets, and, further, that one of the judges shall write his name or initials directly under said official stamp.

By reason of the prohibitory language of the statute against the depositing of any ballot in the box not endorsed as provided, and in connection therewith, the positive declaration that any ballot not so endorsed should be void and should not be counted, the statute in that respect was held to be mandatory.

In 1907, Sections 334 and 341 were amended and re-enacted, so that Section 334 instead of positively prohibiting the deposit in the box of a ballot not properly endorsed, now reads as follows:

"It will be the duty of the judges of election to see that the official endorsement herein provided for appears upon each ballot before the same is deposited in the ballot box."   (Laws of 1907, Ch. 54, Sec. 1.)

Section 341 was amended by Section 2 of the same act, so that as to ballots in the box not properly endorsed the section now provides:

"In the canvass of votes if it shall appear that there is a greater number of ballots in the box than the number called for by the poll list, it shall be the duty of the judges to reject any ballots which are not endorsed with the official stamp or which have not endorsed thereon the initials or name of the judge of election, as provided in this title, *until* the number of ballots in the box shall agree with the number on the poll list."   By Section 4 of said amendatory act it is provided that all acts and parts of acts "in conflict with the provisions of this act are hereby repealed."

There can be no question about the purpose of the legislature in enacting the amendatory statute of 1907, and it is to be construed with the legislative intent in view.   To more plainly show the intention of the law Section 3 provides that nothing contained in the act shall be so construed as to change, amend or modify any existing act in the determination or decision of any election contest "now pending," but Sections 334 and 341 as amended "by this act," and the other statutes amended, modified or repeaeld "by any of the provisions of this act," shall be continued in force

"with the construction, operation and interpretation thereof that should or would have been given to the same, in the determination of any such election contest in the same manner" as if. this act had not been passed.

As the act of 1907 changed the provisions of Section 341, so that instead of rendering a ballot not properly endorsed void and prohibiting its being counted, it provides for rejecting such ballots "until" the number of ballots in the box and the number of names in the poll list agree, and Section 334 was materially changed in language, it is clear that it was intended to avoid the effect as declared in the case of Slaymaker v. Phillips, *supra,* of the mandatory language of the sections as they stood before the amendment. And that result has been accomplished it seems to us by the change made in the sections aforesaid. Possibly Section 334, as amended, might be held mandatory in language, but without some declaration rendering non-compliance with its provisions by the judges of electon as necessarily fatal to a ballot, it is doubtful, at least, whether standing alone it could be construed as having that effect. However, by the amended Section 341, it seems to be declared that the only effect of depositing ballots in the box, not properly endorsed, is the rejection of a sufficient number of such ballots, in case there are more ballots in the box than the number called for by the poll list, to make the list and number of ballots agree. Section 285 is left standing without specific amendment, but if it was previously to be construed as mandatory, so as to vitiate a ballot placed in the box in violation of its provisions, its construction is materially affected by the amended Sections 333 and 341, and the repealing clause of the amendatory act of 1907. The duty imposed upon the judges of election to deposit in the box only such ballots as are endorsed in the manner provided by law should be faithfully complied with, but as a result of the recent amendments, except as now provided by Section 341, as amended, a ballot accepted and deposited is not to be invalidated and excluded from the count, because of

the absence of the proper endorsement, where there is no evidence of fraud.  Fraud is not here alleged.

It follows that the demurrer to the return was properly sustained, and that the judgment must be affirmed.  At the time the cause was commenced and the alternative writ issued the board, it is conceded, had not completed the labor of canvassing the vote and returns, and it appears that when they thereafter adjourned, they had not completed such labor, since they omitted to count and canvass the votes here in question.  Not having counted and abstracted those votes nor shown sufficient cause for not doing so, the peremptory writ was properly granted.  It will be ordered that said canvassing board and the members thereof. the defendants below, and plaintiffs in error here, assemble and reconvene within ten days and proceed to perform the duty required by the peremptory writ, and that forthwith thereafter they make due return to the said district court of their performance of said duty.

BEARD, J., and SCOTT, J., concur.