[No. 6128.]

LEHMAN ET AL. v. PETTINGELL, ETC., ET AL.

1. **Elections—Returns—Canvassing Board—Incomplete Canvass —Mandamus to Compel Reconvening—Certificate of Election.**

   The duties of a county board of canvassers of election returns are purely ministerial where there is but one set of returns from each precinct, and the board may be compelled by mandamus to reconvene for the purpose of making a canvass of all the returns from all the precincts, and to issue a certificate in accordance therewith, whenever it appears by proper petition that it has failed to do so and that the result of the election can be determined thereby.—P. 263.

2. **Elections—Returns—Irregularities in Certification—Canvassing Board—Duty to Canvass and Certify Vote.**

   Irregularities committed by judges of election in the certification of their returns do not invalidate the returns, unless they are in such a state as to render it impossible to ascertain therefrom the vote and for whom cast, and such returns must be canvassed and certified by the canvassing board.—P. 264.

3. **Same.**

   The judges of election in a certain county precinct did not receive the poll books required by law in time for use on election day, and they and the clerks thereupon kept a list of the voters and made a tally of the votes on sample ballots, and the judges, after certifying to the result of the election, although not in the manner and form prescribed by statute, delivered the returns to the county clerk within a few days after election.  The board of canvassers refused to count and canvass said returns, although no other returns were received from that precinct, solely because the certificates and oaths were not in the form, and the returns

upon the proper blanks, required by statute. Held, that such irregularities did not invalidate the returns; and, it further appearing that the precinct judges in good faith undertook to certify the true result of the precinct election and that the result could be ascertained therefrom, it became the duty of the board to canvass such returns and to issue certificates in accordance with the result.—P. 264.

4. **Elections—Mandamus—Parties—Compelling Canvass of Votes —Statutory Construction.**

Under § 10, Mills' Ann. Code, providing that all persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs, two candidates voted for at an election may join in a mandamus proceeding against the canvassing board to compel a proper canvass to be made.—P. 265.

*Error to the County Court of Grand County.*
*Hon. J. W. Swisher, Judge.*

Mandamus proceedings by Henry Lehman and James C. Mugrage against J. N. Pettingell, as county clerk of Grand county, Colorado, and J. E. Brown, as justice of the peace for the third precinct of said county, and C. H. Nuckolls, as justice of the peace for the second precinct of said county, to compel defendants to canvass the returns of an election. From a judgment for defendants, plaintiffs bring error.                                    *Reversed.*

Mr. HENRY J. HERSEY and Mr. ARTHUR C. LABRIE, for plaintiffs in error.

Mr. JOHN T. BOTTOM and Mr. D. P. HOWARD, for defendants in error.

CHIEF JUSTICE STEELE delivered the opinion of the court:

The defendants constituted the board of canvassers of Grand county, and, after the election in the year 1906, sat as such board of canvassers and made a partial canvass of the returns of the judges

of election in Grand county, and caused certificates of election to be issued. The plaintiffs were the candidates for sheriff and county treasurer, respectively. An alternative writ of mandamus was issued, which sets out certain facts with reference to the conduct of the canvassing board in failing to canvass the returns from precinct number 5 of said county. We shall not undertake to set forth in detail the contents of the writ, but the important facts stated therein are that the judges of election did not receive, in time for use on election day, the poll books required by law to be used at the election, and that the clerks and judges kept a list of the voters and made a tally of the votes on sample ballots, and that they did certify to the result of the election, although the oaths do not appear to have been taken in the manner prescribed by law, nor in the form required by statute; that the returns were delivered by one of the judges of election to the county clerk within a few days after the election; that one of the members of the canvassing board proceeded to the precinct for the purpose of having the returns corrected so as to meet the requirements of the statute; that thereafter one of the judges of election, who had not signed the corrected returns as prepared by the member of the board, because of his absence from the precinct at the time after the election when the corrected returns were signed by the other judges, proceeded to the county seat and there offered to sign the returns, but that the county clerk, for the alleged reason that the canvassing board had adjourned, refused to allow the said judge to sign the said amended returns. The writ of mandamus commands the defendants to reconvene and canvass the returns from said precinct, and to issue certificates of election in accordance with the canvass. It also appears from the writ that, if the said returns from

said 5th precinct are canvassed, the result of the election as certified by the canvassing board will be changed, and the canvass will show that the said Henry Lehman and James C. Mugrage were elected to the offices of sheriff and treasurer, respectively.

The answer of the defendants denies generally the statements of the alternative writ, and, for a further answer and affirmative defense, they allege that the said returns are not signed by the registrars who made the registration, and they set forth many instances in which the judges and clerks have failed to comply with the statute in respect to the conduct of the election and the certification of the returns. They also allege that the returns show sixty-five votes as having been cast at said election, and that the voters in said precinct do not exceed thirty-two; that it appears from the registration list, as filed by the said judges and clerks of election, that a large number of persons appear on the certificate of registration who reside in some other precinct than that of said precinct number 5; that a large number of persons are certified to as having voted at said election who were not naturalized citizens of the United States.

A demurrer to the answer was overruled. The court proceeded to hear testimony on the part of the defendants, stating that he did not desire to hear testimony on the part of the plaintiffs. At the close of the testimony, the court denied the petition and dismissed the writ with costs. The case is brought here by plaintiffs upon writ of error. The court appears to have based his judgment dismissing the writ upon the ground that the canvassing board, having adjourned, could not be required by law to reconvene for the purpose of making another canvass; that the board, after it had made a canvass and certified the result, had no power to reconvene, and that

courts cannot compel them to do what they are powerless to do themselves.   It is conceded that two of the persons who had been appointed as registrars of election by the board of county commissioners signed the returns from this precinct.   There do not appear to have been any other returns received from said precinct, and the board of canvassers refused to count and canvass the returns from precinct number 5 solely because the certificates and oaths are not in the form prescribed by statute, and because the returns are not upon the proper blanks required by statute to be used for such purpose.

The only question, then, for our determination is whether a board of canvassers has any discretion to refuse or reject returns because of irregularities, when there is but one set of returns made and the result of the election can be determined from an inspection of such returns.   This question, in so far as the power of the board of canvassers to consider any other matter than that contained in the returns, has been decided by this court in the case of *Kindel v. Le Bert,* 23 Colo. 385.   In that case the court, in passing upon the eligibility of the county clerk and recorder to sit as a member of the canvassing board in canvassing the returns of an election at which he was a candidate for re-election, said:   ''In the case before us, the power exercised by the canvassing board, of which contestee was one member, is purely ministerial, or, as has been otherwise expressed, mathematical.   The only power conferred upon, and the only duty required of, the canvassing board in relation to the canvass, is to count the votes based upon the returns as made by the election judges, and to give certificates to those receiving a majority of the votes thus ascertained.   The canvassing board cannot go beyond or behind the returns, or reject votes, or otherwise inquire into the validity or conduct of

the election.    Upon the proposition that such duties
are, in no sense, judicial, the authorities are uni-
form.''

Under this authority, the duties of the board of
canvassers are held to be purely ministerial, and
their only duty is to count the votes as certified by
the judges from the respective precincts and to issue
certificates to those who appear from the returns
of the judges to have received the greatest number
of votes cast at the election.    And it was the duty of
this board to have canvassed and certified the re-
turns from all of the precincts of this county and
to have issued certificates in accordance with the
canvass.    In a case where there are two sets of re-
turns presented to the canvassing board, each pur-
porting to be based upon a count of votes by judges
and clerks of election, it then becomes the duty of
the board to select which, in their judgment, are the
genuine returns, and to make a canvass; and in so
doing they are vested with certain discretionary
power.    But where but one set of returns is made
they have no discretion, their duties are purely min-
isterial, and they may be compelled to act by man-
damus upon proper petition and showing.    The fact
that the board may have adjourned without com-
pleting its work we do not regard as material.    The
board can be compelled by mandamus to reconvene
to make a canvass of the returns from all the pre-
cincts whenever it appears, by proper petition, that
it has failed to do so.    If returns are in such condi-
tion that the result of the election cannot be deter-
mined, the board cannot be compelled to canvass
such returns, but in this case it appears very clearly
that the judges have shown the number of votes re-
ceived for each candidate upon the ticket, and
although the returns are not in the form required
by law, still it can be determined at a glance what

the result of the vote was in this particular precinct. Nor do we think that the irregularities shown to exist in these returns constituted a sufficient reason for the refusal of the board to make a canvass of them. The rule is that irregularities by the judges of election in the certification of their returns do not invalidate the returns, unless they are in such a state as to render it impossible to ascertain from them the vote cast and for whom cast, but that such returns must be canvassed and certified by the canvassing board.—McCrary on Elections, sections 412, 413.

Any other rule would enable canvassing boards, through design or incompetency, to temporarily, at least, defeat the will of the people and to compel persons who had received a majority of the legal votes to institute contest proceedings, entailing great expense and delay upon the person elected. If, as alleged by the respondents in the answer, a large number of persons voted at said election who were not legal voters, the statute provides a means for excluding their votes, but the canvassing board has no authority so to do, and such votes can only be excluded in a contest proceeding.

It is said that if we allow these returns to be canvassed that it will open the door for a great fraud, and that any person may file with the county clerk certificates of election certifying to almost anything. It is not charged in this case that the judges of election committed fraud in the certification of the returns, or that persons other than the judges of election certified these returns, and it does appear that two of the persons who had been appointed as registrars of election, whose duty it was to serve as judges of election, signed these returns, and it further appears to us that these judges have in good faith undertaken to certify the true result of the

election in the precinct, and, in our opinion, it was the duty of the board to canvass the returns of the judges and to issue certificates in accordance with the result.

It is stated that the writ should have been dismissed because there was a misjoinder of parties plaintiff, in that said action cannot be properly maintained by said plaintiffs jointly, and that there is a non-joinder of parties plaintiff in that said cause should have been brought in the name of the people of the state of Colorado upon the relation of said plaintiffs. The authorities do not sustain counsels' contention that the action must be brought in the name of the people of the state.—*Stoddard v. Benton*, 6 Colo. 508. The two candidates who are vitally interested in the result of the election, and whose rights were affected by the action of the canvassing board, join in an action to compel a proper canvass to be made. Their interests are identical—they ask for the same relief—the remedy afforded each is the same, and under section 10 of the Code of Civil Procedure, providing that all persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs, the plaintiffs were properly joined.

For the reasons given, the judgment of the county court is reversed.                     *Reversed.*

Mr. JUSTICE CAMPBELL and Mr. JUSTICE MAXWELL concur.