[No. 2333]

DONALD MACLEAN, RESPONDENT, v. GEORGE BRODIGAN, AS SECRETARY OF STATE, AND MAURICE SULLIVAN, AS LIEUTENANT-GOVERNOR AND EX OFFICIO ADJUTANT-GENERAL, APPELLANTS.

[172 Pac. 375]

1. STATUTES—REVIVOR OF STATUTE BY TITLE—ELECTIONS—ELECTORS IN MILITARY SERVICE—"AMENDMENT"—"REVISION"—"REVIVE."
    The provision of Const. art. 4, sec. 17, that no law shall be revised or amended by reference to its title only, does not render invalid the provision of Stats. 1917, c. 197, that electors in the military service of the United States may vote in accordance with Stats. 1899, c. 94, which was repealed by Stats. 1913, c. 284; revival by title not being prohibited; for an "amendment" is an alteration effecting a change in the draft, or form, or substance, of a law already enacted, or of a bill proposed for enactment, but, when the legislative body attempts to revise, it thereby assumes to make additions or changes or corrections to alter or reform something then in force and effect, and "revision" in a legislative sense applies only to a measure, bill, or law then having existence, life, and force, and cannot, in the nature of things, apply to a nullified or repealed act; and the term "revive," as applied to legislative proceedings, signifies the reconference of validity, force, and effect, at least the reconference of validity, force, and effect as the revived measure, law, or bill formerly possessed.

2. STATUTES—INCORPORATION OF REPEALED ACT—EFFECT.
    Where one act of the legislature specifically adopts the provisions of another act upon the same general subject, the effect is to incorporate the adopted act, making it effective for the designated purpose, and that the adopted act has been repealed is immaterial.

3. ELECTIONS—VOTING—PERSONS ENGAGED IN "MILITARY SERVICE."
    Stats. 1917, c. 197, providing for taking of votes of electors in the military service of the United States, is a compliance with Const. art. 2, sec. 3, and is not void for discrimination against electors in the naval service, or conscripted men in the military service, since "military service" includes every branch of service in either the army or the navy of the United States.

APPEAL from First Judicial District Court, Ormsby County; *Frank P. Langan*, Judge.

Action by Donald Maclean against George Brodigan, as Secretary of State of the State of Nevada, and Maurice J. Sullivan, as Lieutenant-Governor and ex officio Adjutant-General of the State of Nevada. From an order overruling a general demurrer to the complaint and judgment, defendants appeal. **Reversed.**

*Geo. B. Thatcher,* Attorney-General, *E. T. Patrick,* Deputy Attorney-General, and *Wm. McKnight,* Deputy Attorney-General (*Hoyt, Gibbons, French & Springmeyer,* of Counsel), for Appellants:

The statute of 1899 is in full force and effect, under the well-defined principle of law that where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or the provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. (2 Lewis's Sutherland, Stat. Constr. 2d. ed. 405, 407; *Phoenix Assurance Co.* v. *Fire Department,* 117 Ala. 644; *S. V. W. Works* v. *San Francisco,* 22 Cal. 439; *Schwenke* v. *Union Depot R. R. Co.,* 7 Colo. 515; *Jones* v. *Dexter,* 8 Fla. 285; *Turney* v. *Wilton,* 36 Ill. 393; *People* v. *Crossley,* 261 Ill. 85; *Furbish* v. *County Commissioners,* 93 Me. 127; *Haston* v. *Lamkin,* 115 Mo. 33; *In Re Greenfield,* 191 Pa. St. 295; *Ex Parte Barry,* 12 R. I. 51; *Quinlin* v. *Railroad,* 89 Tex. 372; *Garland* v. *Hickey,* 75 Wis. 183; *Worthington* v. *District Court,* 37 Nev. 225.)

Appellants are justified in performing or attempting to perform the acts complained of. The demurrer should have been sustained. The decision of the lower court should be reversed.

*H. V. Morehouse, Amicus Curiæ:*

The only inhibition against the power of the legislature as to the right form and manner of legislation is contained in section 17, of article 4, of the constitution of Nevada, which reads: "Each law enacted by the legislature shall embrace but one subject, and matters properly connected therewith, which subject shall be briefly

expressed in the title; and no law shall be revised or amended by reference to its title only; but in such case, the act as revised or section as amended, shall be reenacted and published at length." It will be observed that this provision of the constitution does not use the word "revive" or "revived," but the words "revised or amended." The word "revive" is not synonymous with "amend" or "revise," and has an entirely different meaning. This being so, there is no prohibition in our constitution against the legislature reviving an act by reference to the act, and making such act a part of a new act, even if such act has been heretofore repealed. "In the absence of a constitutional provision to the contrary, revival of a repealed statute by reference to its title only is valid. Where an act is revived by a subsequent act, it is revived precisely in that form and with that effect which it had at the time when it expired." (34 Cyc. 1724; 36 Cyc. 1102; *In Re Woods,* 31 Ch. Div. Eng. 607; *Jones* v. *Dexter,* 8 Fla. 276; *Wright* v. *Overstreet,* 50 S. E. 487; *Gadkin* v. *Whitney,* 63 S. W. 188.)

The word "military" is not limited solely to the army; it includes the navy. Military means "pertaining to war"; "concerned with war," and includes "volunteers." By subdivision 2, section 8, Federal Constitution, the President of the United States is made the commander-in-chief of the army and navy. (*Stocker* v. *United States,* 39 Ct. Cl. 300.)

*James Glynn, Amicus Curiæ:*

A repealed act may be revived, even upon the happening of a contingency. (*The Brig Aurora,* 7 Cranch, 382.) Such an act may be revived either expressly or conditionally. (*Field* v. *Clark,* 143 U. S. 682; *Pollock* v. *Bridgeport,* 29 L. Ed. 148; *Flanders* v. *Town of Merrimac,* 48 Wis. 567; *Stevens* v. *McCargo,* 9 Wheat. 502; Potter's Dwarris, Stats. and Constitutions, p. 159.)

The acts of 1915 and 1917 revived the act of March 14, 1899. (Cutting's Comp. Laws, 1737.)

The act in question provides for "taking the vote of

electors who may be in the military service of the United States." Soldiers in the navy are certainly in the military service, the navy being a branch of that service.    Considering the purpose and intent of the act, this construction violates no rule.    It is true, as a general rule, that statutes have no extraterritorial effect, but personal statutes are not unknown to the law.    "If the object be of a personal nature,    *    *    *    the statute is purely personal, and the quality accompanies the person everywhere." (Potter's Dwarris, Stats. and Constitutions, pp. 90, 91, 92.)

*Warren E. Baldy,* District Attorney (*R. A. McKay,* of Counsel), for Respondents:

The appellants have relied solely upon the general proposition that where one statute adopts the particular provisions of another statute by a specific and descriptive reference thereto, the effect is the same as though the statute or provisions adopted have been incorporated bodily into the adopting statute, and contend that by the provisions of the statute of 1917 appellants are authorized to proceed under the provisions of the statute of 1899 with reference to the taking of votes of electors in the military service of the United States.    This position is challenged as unconstitutional, in that it violates section 77, article 4, of the state constitution, which provides that "each law enacted by the legislature shall embrace but one subject, and matters properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but, in such case, the act as revised, or section as amended shall be reenacted and published at length."    The act of 1917 refers to the date of approval of the act of 1899 only, and does not even state the title.    It attempts to revive an act which has been repealed.    (Stats. 1913, p. 568.)

The act of 1899 unduly and unjustly discriminates between volunteers in the "military service" and volunteers in the "naval service," and between volunteers and "conscripted" men, being in violation of section 3, article

2, of the state constitution, which provides that "the right of suffrage shall be enjoyed by all persons, otherwise entitled to the same, who may be in the 'military or naval service' of the United States."

By the Court, McCarran, C. J.:

This action was commenced in the district court to enjoin the appellant Sullivan, as adjutant-general, from certifying to the secretary of state any list or lists of electors now engaged in the military service of the United States, and to enjoin the appellant Brodigan, as secretary of state, from incurring any expense in the purchase of ballot paper or registration supplies for the taking of the votes of the electors of the State of Nevada now engaged in the military service of the United States, and from incurring any cost or expense therefor to the State of Nevada, and to restrain both appellants in their official capacity from doing anything whatever imposed upon them or either of them by the act of the legislature of Nevada of March 14, 1899. From the order overruling a general demurrer, an appeal to this court is taken.

1. One question only is here involved, to wit: Is the statute of March 14, 1899, entitled "An act to provide for taking the votes of electors of the State of Nevada, who may be in the military service of the United States," now in force and effect as a mode by which citizens of this state now in the military forces of the United States may vote in our state elections? The act just referred to (Stats. 1899, p. 108) was one the original purpose of which was to take the vote of the electors of the State of Nevada who might be in the service of the United States and beyond the territorial limits of the state. It provided that the adjutant-general of the state should in due time make and deliver to the secretary of state duly certified separate lists for each county having soldiers in the service, giving the names of all qualified electors under the law of this state at the time of their enlistment, etc. By the provisions of the act, the secretary of state was required to immediately transmit duly

certified copies of such lists to the commanding officer of each of the organizations of which electors of this state might be members. The act then proceeds to prescribe for the holding of an election at a place beyond the territorial limits of this state, where electors of this state might be engaged in the military service. It designates who should be the officers of such election, how the vote should be counted and canvassed, and how the same should be returned or transmitted after the election was conducted.

By an act approved March 31, 1913, entitled "An act relating to elections and removals from office," the act of March 14, 1899, was specifically repealed. (Stats. 1913, p. 568.)

By section 149 of an act entitled "An act relating to elections," approved March 29, 1915, it is provided:

"Electors of the State of Nevada in the military service of the United States may, when called into such service, vote in accordance with the provisions of the act approved March 14, 1899." (Stats. 1915, p. 507.)

By section 101 of an act entitled "An act relating to elections," approved March 24, 1917, it is provided:

"Electors of the State of Nevada in the military service of the United States may, when called into such service, vote in accordance with the provisions of the act approved March 14, 1899." (Stats. 1917, p. 385.)

It is the contention of respondent here that section 101 of the act of 1917, just quoted, is without force or effect, and that the act of March 14, 1899, is not revived. We have been referred especially to our constitutional provision (section 17 of article 4), reading as follows:

"Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but, in such case, the act as revised, or section as amended, shall be reenacted and published at length."

In furtherance of respondent's contention reference is made to decisions bearing upon constitutional provisions

somewhat similar to ours, but a studied difference may be noted when comparing our constitutional provision with the provisions in states like Alabama, New Jersey, and Kansas, in each of which it is provided:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be reenacted and published at length." (Const. Ala. art. 4, sec. 45.)

A like provision is found in the constitution of New Jersey (Const. N. J. art. 4, sec. 7), and also in the constitution of Kansas (Const. Kan. art. 2, sec. 16).

If by our constitutional provision the legislature was prohibited from reviving statutes by title only, then the rule recognizing the effect of the constitutional inhibition might be relied on by respondent here.

In *Riter* v. *Douglass,* 32 Nev. 400, 109 Pac. 444, we expressed the rule directly applicable here:

"Congress is authorized only to enact such laws as the national constitution expressly grants it or is clearly implied with the grant; while the law-making power of the state is authorized to enact legislation on all subjects which are not expressly prohibited by our state constitution or in contravention of the federal constitution."

The legislature of 1917, steeped as it must have been in the atmosphere of contingency, when the aurora borealis of war was all too visible, sought to make provision for the taking of the votes of citizens of this state who might, at the time of the holding of the next election, be in the military service of the country. The legislature of 1899 had enacted a law comprehensive and effective at least for conditions then prevailing. A subsequent legislature had repealed that statute, but the legislature of 1917 sought to make it operative, not as an individual statute, but as a part of the working plan of the general election law.

Acts of the legislature which attempt to revive a statute formerly nullified are not to be confused or confounded with acts attempting to amend or revise. An

amendment is an alteration effecting a change in the draft, or form, or substance of a law already enacted, or of a bill proposed for enactment. (*State* v. *Wright and Harris*, 14 Or. 365, 12 Pac. 708.) When the legislative body attempts to revise, it thereby assumes to make additions or changes or corrections to alter or to reform something then in force and effect. Revision in a legislative sense can only apply to a measure, bill, or law then having existence, life, and force, and cannot, in the very nature of things, apply to a nullified or repealed act. The term "revive," as applied to legislative procedings, signifies the reconference of validity, force, and effect; at least, the reconference of such validity, force, and effect as the revived measure, law, or bill formerly possessed. While revision or amendment by title only is by our constitution prohibited, such prohibition does not extend to revival by title, hence the legislature of 1917, in enacting section 101 of the election law, did not run counter to the constitutional provision.

2. Where one act of the legislature specifically adopts provisions of another act, the latter being of the same general subject-matter, or being by nature or substance properly connected therewith, the effect of the adopting act is to incorporate the adopted act and make the latter effective in the policy and for the purpose designated. The fact that the adopted act may have been at a former time repealed or nullified does not operate against its effectiveness when revived by adoption into a valid and effective law. (Lewis's Sutherland, Stat. Const. 2d ed. p. 788; *People* v. *Glassco*, 203 Ill. 353, 67 N. E. 499.) The rule which we have applied here has found sanction even under that strict rule of construction which applies to criminal statutes. (*State* v. *Caseday*, 58 Or. 429, 115 Pac. 287.)

In reviving a statute by making the same a part of another and newer act, the revived or adopted statute takes its new validity, or new life, so to speak, not from its former existence or enactment, but rather by virtue of the force, effect, and life of the adopting statute. A

repeal of a reviving or adopting statute may repeal the revived or adopted provision if the latter had been repealed prior to the time of adoption, but the repeal of an adopted statute, where the same was in force and effect at the time of its adoption, will not affect its validity or operation within the scope of its functions, as prescribed by the adopting act. (*Gaston* v. *Lamkin*, 115 Mo. 20, 21 S. W. 1100.) In the last-cited case, the court voiced the rule thus:

"The general rule governing in such case seems to be that, where one statute refers to another for rules of procedure prescribed by the former, the former statute, if specifically referred to, becomes a part of the referring statute, and the rules of procedure prescribed by the earlier statute, so far as they form a part of the second enactment, continue in force, although the earlier statute be afterwards modified or repealed."

This rule might, we think, be regarded in some instances as too general, but where the language of adoption or revival is direct as to reference and specific as to intendment, as it is in the reviving statute here involved, the rule is eminently applicable. (*Ventura County* v. *Clay*, 112 Cal. 65, 44 Pac. 488.)

It might be noted that the Supreme Court of Washington (*State* v. *Tausick*, 64 Wash. 69, 116 Pac. 651, 35 L. R. A. n. s. 802) has said, under conditions not unlike those presented here, that under a constitutional inhibition providing that no act shall be "revised" or "amended" by mere reference to its title, an adopted statute, not being amendatory or revisory in character, is not obnoxious to this constitutional provision.

In the case of *Brig Aurora*, 7 Cranch, 382, 3 L. Ed. 378, the Supreme Court of the United States observed the rule. There provision was made for a revival of a statute by proclamation of the President, contingent upon certain acts of a foreign nation. The court, in addressing itself to the subject, said:

"We can see no sufficient reason why the legislature

should not exercise its discretion in reviving the act of March 1, 1809, either expressly or conditionally, as their judgment should direct."

In the case of *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, the rule as declared in the Aurora case was approved.

The Supreme Court of Florida, in the case of *State ex rel. Attorney-General* v. *Green,* 36 Fla. 154, 18 South. 334, met the identical question here under consideration, and under very like circumstances as to repeal and revival, and under a constitutional provision identical to ours. (Art. 3, sec. 16, Const. of Fla.) The views expressed and reasoning followed by the court there is illuminative of the subject. There the court drew the distinction between constitutional provisions prohibiting revival of statutes and those prohibiting revision of statutes.

In the case of *Quinlan* v. *Houston & T. C. Ry. Co.,* 89 Tex. 356, 34 S. W. 738, the Supreme Court of Texas held likewise. To the same general effect is the application of the rule in the case of *Flanders* v. *Town of Merrimack,* 48 Wis. 567, 4 N. W. 741.

3. Section 3 of article 2 of our constitution provides:

"The right of suffrage shall be enjoyed by all persons, otherwise entitled to the same, who may be in the military or naval service of the United States; *provided,* the votes so cast shall be made to apply to the county and township of which said voters were bona-fide residents at the time of their enlistment; *and provided further,* that the payment of a poll tax or a registration of such voters shall not be required as a condition to the right of voting. Provision shall be made by law regulating the manner of voting, holding elections, and making returns of such elections, wherein other provisions are not contained in this constitution."

It is contended by respondent that the act of 1899, if the same was revived, is void because it unduly and unjustly discriminates between volunteers in the United

States army service and volunteers in the naval service, and also discriminates between volunteers in the United States service and conscripted men in the military service. Their contention in this respect is based on the fact that no mention is made of those electors of this state who may be in the naval service of the United States. This entire contention is, in our judgment, met by the fact that the term "military" is not limited in its application to the land forces, but applies equally to the naval branch of the nation's offensive and defensive machinery.

The Circuit Court of the United States, in *Re Burns* (C. C.) 87 Fed. 796, regarded the term "military service," as used in the third article of war, as applying as well to the volunteer army as to the regular army of the United States. A statute prohibiting the enlistment or mustering into the military service of any person under the age of 21 years without the written consent of his parents or guardian, was there held to apply to the volunteer forces as well as to the regular army.

The military force of the government is seated in its army and navy. These are coordinate factors, and an individual belonging to either is properly in the military service of the country.

The case of *Stocker* v. *United States,* 39 Ct. Cl. 300, is authority for the assertion that the army and navy constitute the military forces of the government.

It may be noted in passing that by the recent enactment of Congress to extend protection to the civil rights of members of the military and naval establishments of the United States engaged in the present war (approved March 8, 1918), the term "person in military service" as used in the act is declared to include all officers and enlisted men of the regular army, the regular army reserve, the officers' reserve corps, the enlisted reserve corps, all officers and enlisted men of the national guard and the national guard reserve, and all officers and enlisted men of the navy and marine corps and the coast

guard; also all officers and enlisted men of the naval militia, naval reserve force, marine corps reserve, and national naval volunteers.

It is conclusive of the question to say that it must be assumed that the legislature of 1899, when it enacted the statute revived by our act of 1917, did so with a view to complying with the declared policy of the state as enunciated in section 3 of article 2 of the constitution. It must be inferred that the legislature took cognizance of the terms and provisions of that section of the constitution, and that when, in the act of March 14, 1899, it used the term "military service," it did so advisedly and for the purpose of extending the right of suffrage to all persons who might be in the land or naval or other forces of the United States. Hence the logical inference may be drawn in favor of the intendment of the legislature that the term "military service" was used in contemplation of all branches of the maintained fighting forces of the country. The same reasoning must apply as to the legislative intent when section 101 of the act of 1917 was incorporated into our statute relating to elections.

By section 101 of the 1917 act relating to elections the legislature sought to establish a method or mode by which electors of the State of Nevada in the military service of the United States might cast their vote at elections. Section 101 of the act of 1917 does not limit its force or effect to either volunteers or conscripted men. It is to all electors of the State of Nevada who may be in the military service of the United States, regardless of how they may have entered that service, that section 101 of the law seeks to accord a way by which their votes may be taken, counted and canvassed. Hence, if the act of 1899 applied only to those who might have been in the military service of the United States as volunteers, nevertheless the provisions of the act of 1899, whereby the votes of such volunteers might be taken, counted, and canvassed, are by the act of 1917

made applicable, not alone to volunteers, but to all in the military service of the United States who may be qualified electors of the State of Nevada.

It must be understood that we do not assume to deal with the question of expediency, or as to whether or not the policy of the act of March 14, 1899, is such as would be considered in keeping with conditions that confront this state today; nor would we assume to determine the effectiveness of the statute of March 14, 1899, or as to its being sufficiently comprehensive to accomplish the result desired under the present conditions. Of this we may entertain a doubt; indeed, if we were called to pass upon the question under different conditions it might be found necessary to express different views; but this is an appeal from an order overruling a general demurrer, and we assume to determine one question only.

The legislature of 1917 sought to establish a method by which electors of this state who might be in any branch of military service could cast their vote at elections held in this state during such service. With that object in view, the legislature adopted and incorporated into the general election laws the method by which a similar object had been carried out by a former legislature. The method in the former instance may have applied only to those electors who were then in the military service under the volunteer system, but if the legislature of 1917 intended, and we assume it did, that this method should now apply to all electors in the military service, regardless of the manner of their induction into that service, such intendment must be carried out so far as possible. The result intended may be incapable of accomplishment under the method prescribed, but questions involving such, if they arise, are for the future.

The order and judgment appealed from are reversed. It is so ordered.