No. 11,646.

KAY v. STROBECK.

Decided March 7, 1927. Rehearing denied March 28, 1927.

Election contest involving office of school director. Judgment for contestor.

*Reversed.*

1. ELECTIONS—*Contest—Illegal Vote—Rejection.* In an election contest, there was no error in the refusal of the trial court to declare a vote illegal where the voter's name was not set forth in the statement of contest as required by section 7798, C. L.

2. *Residence—One only.* One may have only one domicile or residence at any one time, and his domicile or voting place remains continuous until he has acquired a legal residence or domicile elsewhere.

3. *Domicile.* The law encourages all legal voters to exercise their right to vote, and in cases of doubt as to a voter's residence, it is resolved in favor of the permanency of residence in the precinct where he casts his ballot.

4. RESIDENCE—*Change.* To acquire a new residence there must be an act and intention to do so, that is, a removal from the old, with the intention of acquiring a new one elsewhere, and these two things must concur.

*Error to the County Court of Weld County, Hon. Roy M. Briggs, Judge.*

Mr. THOMAS A. NIXON, for plaintiff in error.

Mr. WALTER E. BLISS, Mr. RALPH L. DOUGHERTY, for defendant in error.

*Department Two.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

AT an election in May, 1926, for school director in district 37, Weld county, which comprises the town of Eaton and surrounding territory, the votes as canvassed by the election officers showed that W. D. Kay had received 348 votes and that Earl C. Strobeck had received 345 votes, whereupon Kay received his certificate of election and entered upon the duties of the office. The matter for review on this writ of error is the judgment in the statutory election contest which the unsuccessful candidate Strobeck instituted in the county court of Weld county against the successful candidate Kay, which was decided in favor of the contestor. The trial court found that of the 345 votes which were cast and counted for contestor Strobeck, 4 of them should be deducted: 2 votes because they were cast by two persons who were disqualified because of their lack of citizenship, and the other 2 votes on account of lack of residence requirements, thereby reducing Strobeck's total to 341 votes. The court found that of the 348 votes which were cast and counted for the contestee Kay, 8 of them were cast by persons disqualified on lack of statutory residence requirements and 2 votes were cast by minors, and so disqualified, and that the aggregate of these 10 illegal votes should be, and they were, deducted from the total number of 348 votes counted for Kay, thereby reducing his total to 338; with the result, as so declared by the court, that the total legal votes cast for contestor Strobeck exceeded the number cast for Kay by 3 votes, whereupon Kay's certificate of election was

canceled, and Strobeck was declared elected and a certificate of election was issued to him.

The contestee Kay has assigned as errors, which are summarized under the two following headings: (1) That at least 5 of the votes that were cast and counted for him and rejected by the trial court upon the ground that they were cast by persons disqualified on account of residence requirements, were, in fact and in law, qualified legal voters of the district. (2) That 4 votes rejected by the election judges upon the total count for each party, where the voters who cast them are unknown—and unknown because the ballots were not numbered and it not appearing otherwise by whom these votes were cast—and the said 4 votes may have been cast by the same voters that are found to be disqualified by the court.

The contestor has assigned the following cross-errors: (1) The trial court erred in not finding the vote cast by Lloyd Berry for plaintiff in error, W. D. Kay, to have been illegal and in not deducting that vote from the total of legal votes found to have been cast for him. (2) The trial court erred in not finding the votes cast by Mrs. Frank Ortega and Mrs. D. Gallegos for plaintiff in error Kay to have been illegal, and in not deducting them from the total of legal votes found to have been cast for Kay. (3) The trial court erred in finding that more than 335 legal votes were cast for plaintiff in error.

It is somewhat unusual to find, particularly in an election contest, that counsel for the respective parties are agreed as to the law of the case, yet we find the statement in the brief of the defendant in error that: "We have no quarrel with the general principles of the law applicable here as quoted in the brief of plaintiff in error." The defendant in error, however, questions the applicability of the law to the facts of the case, as found to be by the trial court. And so our principal task is to determine if the principles of law invoked, as to which both parties agree, are applicable to the facts as they should have been, but were not, found by the trial court.

In view of the conclusion, which a careful examination of the record as understood by us compels, we do not find it necessary to pass upon the second assignment of plaintiff in error, in which it seems his adversary joins, as to the 4 votes rejected by election judges and which were cast by unknown voters. We shall first dispose of the cross-errors of the defendant in error, the contestor.

The court did not commit error in refusing to find and declare the vote cast by Lloyd Berry to have been illegal, and in not deducting the same from the total of legal votes cast for the plaintiff in error contestee. Our statute requires in such cases that the names of all the illegal voters shall be set forth in the statement of contest. Lloyd Berry's name was not in that statement and the court properly refused to declare his vote illegal. Section 7798, C. L. 1921, requires such names to be set forth in the statement of the contestor. In *Schwarz v. County Court,* 14 Colo. 44, 23 Pac. 84, we held this provision to be mandatory. See also *Sugar City v. Board of Commissioners,* 57 Colo. 432, 434, 140 Pac. 809. In that case we held an amendment to the statement, to include the name, is not permissible. Defendant in error, however, makes the point that no exception to the evidence of Lloyd Berry was taken by the contestor, upon which testimony is based the claim of defendant in error that Berry was not a legal voter. The record itself contradicts this contention. The contestor specifically objected to the testimony of Berry on the ground that his name was not set forth in the statement of contest. The court reserved its ruling upon this objection until the conclusion of the case and at that time the objection of the plaintiff in error was sustained on the specific ground that Berry's name had not been inserted in the statement of contest or in the answer or counterclaim.

The second cross-assignment is that the court erred in not finding the votes cast by Mrs. Ortega and Mrs. Gallegos to have been illegal. Counsel for defendant in error say in their brief that the evidence relative to

the qualifications of these two women is the same as that on which the votes of their respective husbands were held to be illegal. We do not find that the record supports this contention. Apparently learned counsel realize this when they say that, had they been able to question these women as to their qualifications, the contestor would have been able to disclose that they were not legal voters, but that when they were needed as witnesses they had left the court room and were not available. It does not appear that contestor asked for time to secure their attendance. With the evidence before the trial court we cannot say that any mistake was made in holding these women to be legal voters and the court, in the circumstances, would not have been justified in deducting their votes from the total of legal votes found to have been cast for the contestee. The third assignment necessarily falls from our disposition of the first two.

We now proceed to a consideration of the first, and important, assignment of the contestee which is that at least 5 of the votes that were cast and counted for him, and which were rejected by the trial court because the voters were not residents of the district, were in fact and in law qualified legal voters. These five voters were Spanish-Americans. Some of them are natives of the State of New Mexico, some of the State of Texas, from which states they came to Weld county, Colorado, to work in the sugar beet fields. They were industrious, hard-working people and no suggestion even is made that they are not good citizens. They all had lived in the town of Eaton, which was a part of the school district, for some time before this election. Most, if not all of them, had children in the public schools of this district. They lived in rented houses within the town. During the time they were working in the beet fields they left the houses which they occupied in Eaton and lived in houses furnished by the beet growers on the lands that were being cultivated. Some of these five voters in question continued to pay rent upon their houses that they vacated in Eaton

while they were at work in the beet fields, and some of them did not. Some of them retained the keys of the houses that they had vacated, and some did not, but all of them testified that it was their intention not to give up their residence in Eaton, but, on the contrary, their intention was to live there as their permanent abiding place and that they were only temporarily absent. Although the absence continued during the growing season, still they had no intention of acquiring a residence elsewhere, but intended it to remain and be in Eaton. The votes of these five citizens, if they had not been rejected by the trial court, but had been counted as cast for the contestee Kay, would have given Kay a majority of at least 2 votes. At one time all of them unquestionably had their permanent residence in Eaton. That is the place where they voted, the place where their children attended the public schools and it is the place which they considered as their permanent home. One may have only one domicile or residence at any one time, and his domicile or voting place remains and continues until he has acquired a legal residence or domicile elsewhere. The law encourages all legal voters to exercise their right to vote, and in cases of doubt as to a voter's residence it is resolved in favor of permanency of residence in the precinct where he casts his ballot. We do not find in this record any evidence which even tends to show that any of these five voters intended to change his once acquired residence in Eaton and thereafter to make his home in any of the beet fields where they were at work or elsewhere. Indeed, it would be difficult to reach a conclusion that their legal residence could be, in the circumstances, on the lands of their employers, the term of such employment continuing only for a limited number of months during each year. As to one of these voters he himself testified that when he came from New Mexico to Colorado it was not his intention, as he expressed it, to live *always* in Colorado; but he later explained by saying that after

he came here he made up his mind not to return to New Mexico, but to remain in Colorado permanently.

Our conclusion is that there is no substantial testimony at all whose probative effect is to show that the residence of these five witnesses was not in the town of Eaton. There is not a particle of evidence that tends to support the apparent finding of the trial court that any of them lived at any other place, in the sense that he considered his residence there, after they had once acquired a residence in the town of Eaton, and this latter fact is not in dispute. We think, on the uncontradicted evidence, they were all legal voters in the town of Eaton and their votes were improperly rejected by the trial court. These votes should have been counted for the contestee, and not for contestor, and the trial court's finding cannot stand. The evidence as we read it shows that these five voters intended to have, and did have, long before this election, their permanent residence in Eaton in this school district. That residence once acquired remains until they have actually abandoned the residence with an intention to renounce the same and to acquire a residence elsewhere. They did not abandon it; they did not gain another residence. To have acquired another residence there must be both an act and an intention to do so; that is, a removal from the old place with the intention of acquiring a new one elsewhere, and these two things must concur. *Kellogg v. Hickman,* 12 Colo. 256, 21 Pac. 325; *Jain v. Bossen,* 27 Colo. 423, 62 Pac. 194; *Merrill v. Shearston,* 73 Colo. 230, 235, 214 Pac. 540.

The utmost that can be said about this evidence is that these voters, all of whom had once acquired a residence in Eaton, during the beet season absented themselves and remained in houses upon the lands of their employers in whose fields they were cultivating sugar beets; they were upon these lands temporarily only and they intended to return to Eaton at the close of the year's work. It is not necessary to swell the list of cases which have

announced the doctrine approved by this court in the cases already cited. We append, however, several authorities along the same lines. 20 C. J. p. 71; *Harbaugh v. Cicott,* 33 Mich. 241; *Graves v. City of Georgetown,* 154 Ky. 207, 157 S. W. 33; *Warren v. Board of Registration,* 72 Mich. 398, 40 N. W. 553, 2 L. R. A. 203; *Vanderpoel v. O'Hanlon,* 53 Iowa 246, 5 N. W. 119, 36 Am. Rep. 216; *Collier v. Anlicker,* 189 Ill. 34, 59 N. E. 615; *Fry's Election Case,* 71 Pa. 302, 10 Am. Rep. 698.

Such being our conclusion it is unnecessary, as we have already said, to pass upon other questions so clearly and fairly discussed by respective counsel. Upon the uncontradicted evidence as we read it, the trial court improperly rejected the votes cast by the witnesses D. Gallegos, Frank Ortega, John Casias, Mrs. John Casias and Bob Hernandez. If these votes had not been rejected and had been counted as they were cast for the contestee Kay, the result would have been that Kay received the majority of legal votes cast. The judgment is therefore reversed, and the cause is remanded with instructions to the county court to set aside its judgment in contestor's favor, and in lieu thereof to enter a judgment canceling contestor's certificate of election, and restoring the certificate of contestee and dismissing the contest.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.