## No. 12,772.

### BULLINGTON *v.* GRABOW.
(298 Pac. 1059)

Decided April 13, 1931.   Rehearing denied May 4, 1931.

562

Mr. Carl J. Sigfrid, for plaintiff in error.

Messrs. Moynihan, Hughes & Knous, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The parties to this election contest were rival candidates for the office of county superintendent of schools of Ouray county at the election on November 4th, 1930. The count of the canvassing board disclosing that Mrs. Grabow, contestee, had received 511 votes and Mrs. Bullington, contestor, 510 votes, a certificate of election was issued to the former. Contestor now seeks to review an adverse decision of the county court.

Two questions are presented. The constitutionality of chapter 94, Session Laws of 1929, an act relating to absent voters, and the sufficiency of certain votes cast thereunder.

The questioned act permits a registered voter, if absent from his county or too ill to attend the polls, to cast his ballot on the day of a general or primary election upon compliance with the regulations provided therein. Section 8 of this act repeals chapter 96, Session Laws of Colorado of 1927, and sections 7727 to 7733, C. L. of 1921. Absent voting has been commonly practiced in Colorado

since its authorization in 1915 by said sections 7727 to 7733, supra, the constitutionality thereof never having been attacked.

■ It is urged that this new act violates sections 1 and 11 of article 7 of the Constitution of Colorado.

Section 1: "Every person over the age of twenty-one years possessing the following qualifications shall be entitled to vote at all elections: He or she shall be a citizen of the United States and shall have resided in the state twelve months immediately preceding the election at which he offers to vote and in the county, city, town, ward or precinct, such time as may be prescribed by law."

Section 11: "The general assembly shall pass laws to secure the purity of elections, and guard against abuses of the elective franchise."

Counsel argues that a voter must be personally present when "he offers to vote" and that the provisions of the absent voters act failed to safeguard the elective franchise. In many other states, which have adopted absent voters laws similar to ours, the same arguments here presented have been elaborately considered and refuted and such acts uniformly have been held constitutional. *Jenkins v. State Board,* 180 N. C. 169, 104 S. E. 346; *Morrison v. Springer,* 15 Ia. 304; *Lehman v. McBride,* 15 Ohio St. 573; *State ex rel. Chandler v. Main,* 16 Wis. 422; *Straughan v. Meyers,* 268 Mo. 580; 187 S. W. 1159; *Maclean v. Brodigan,* 41 Nev. 468, 172 Pac. 375; *Goodell v. Judith Basin County,* 70 Mont. 222, 224 Pac. 1110; *Jones v. Smith,* 165 Ark. 425, 264 S. W. 950; *Matter of Adams v. Flanagan,* 201 App. Div. N. Y. 735; *Glick v. Hunter,* 190 Ind. 51, 129 N. E. 232; *Pratley v. State,* 17 Wyo. 371, 99 Pac. 1116.

In *Jenkins v. State Board, supra,* it is stated at page 178:

"The 'absentee voters' statutes have been passed in this State (and in nearly all others), not for the purpose of giving opportunity for fraud in elections, which would

be inconceivable, and to assert the contrary would be a libel on public opinion throughout the country, which demands fair elections and an honest return of the votes as cast. These statutes have been enacted for the purpose of procuring a fuller expression of the public will at the ballot box. * * * The system of absentee voting which originated in behalf of the soldiers, who, it was felt, should not be disfranchised by reason of their absence in the discharge of duty, received a strong impulse from the action of the Travelers' Protective Association, who urged that they should not be deprived of the franchise while traveling as commercial agents. Nor should anyone be deprived of the franchise by reason of temporary or permanent physical disability.

"This legislation, intended for fuller expression of public opinion at the ballot box, and carefully guarded in its exercise by statutes in all the States, should not be misconceived as an invitation to fraud.

"As a proof of the widespread demand and need for such legislation, the following memorandum of the statutes in the different states is appended." (This list comprises nearly all of the states.)

The arguments of counsel fail to overthrow the presumption of constitutionality. The purpose of the act is laudable—it permits and encourages the exercise of the elective franchise by registered voters absent from their county or too ill to attend the polls, and the legislature has provided conditions to be performed by the voters sufficient to comply with section 11, article 7, of our Constitution. In view of the unanimity of decisions in other jurisdictions, we have no hesitancy in declaring this act constitutional.

The record discloses that the canvassing board counted the absent voters' ballots of Lucy Zanin Zadra, Carrie D. Keller and John H. Calhoun for Mrs. Grabow and the absent voter's ballot of Maude Dexter for Goldie Bullington. It is urged that the votes of Zadra, Keller and Dexter should not have been so counted because of insuffi-

cient compliance with section 3, chapter 94, Session Laws of 1929, and that of John H. Calhoun because he was not a resident of Ouray county.

Section 3, supra, provides: ''In casting such absent voter's ballot the voter shall call to his presence any official authorized to administer oaths or shall present himself before any sitting election board in this state, or before an official authorized by law to administer oaths, either within or without this state; shall identify himself by duplicating his signature on his duplicate application for an absent voter's ballot just below his other signature; shall exhibit such ballot unmarked, subscribe and make oath to an affidavit containing the allegations of the application aforesaid, and also stating that the ballot therewith was received, exhibited to and thereafter marked in the presence of such board or official within the time, and as required by this act and that the voter has not voted at such general or primary election other than by the said ballot; and shall in the presence of such board or person, but in such manner as not to disclose how his ballot is marked, mark, fold and deliver the same to the election board or to said official who shall place the same with said affidavit herein provided for and the duplicate application with the voter's identification signature thereon in the return envelope and shall seal and return same to the voter. Such return envelope with the proper address and postage thereon then shall be mailed by the voter before seven o'clock p. m. of the day of said general or primary election.''

It is undisputed that the envelopes enclosing the ballots of Zadra, Keller and Dexter, when opened by the election officials of Ouray county, did not contain the affidavit required by section 3.

■■ Maude Dexter did not testify and the record is silent as to what was done by her on election day in compliance with the act. Election officials are presumed to comply with the law. The act requires election officials to enclose the ballot, affidavit and duplicate applica-

tion for absent voter's ballot in the return envelope and to seal and return same to the voter. If Dexter had made the required affidavit and the election official had complied with the law, it would have been enclosed by him in the envelope with the ballot and been received by Ouray county officials. Because the affidavit was not received, presumably it was not made and its execution by the voter being a mandatory condition precedent to the right to so vote, such failure vitiated the ballot and the vote evidenced thereby should not have been counted for Mrs. Bullington. Counsel for contestor concedes that this vote should not have been counted.

Lucy Zadra testified by deposition that she appeared before the election judges in precinct 10, district W, Denver, on election day and identified herself as an absent voter of Ouray county, but did not remember that she duplicated her signature on the duplicate application for an absent voter's ballot and that she swore to an affidavit. She further stated: "I signed the affidavit twice, and there was another paper I signed twice but I don't remember what it was. * * * It was placed in the envelope by me, and I sealed it and mailed it at the post office."

Counsel for Mrs. Grabow urge that the provisions of section 3 are directory. The legislature undoubtedly intended that the voter be held to a strict performance of the provisions of section 3—the word "shall" is used throughout. A strict construction thereof is necessary to safeguard the exercise of the elective franchise. *In Re Baker*, 213 N. Y. S. 524, it is stated at page 528: "This absentee vote statute is in derogation of the general election law and should be strictly construed. Its provisions should be rigidly adhered to; otherwise the repeater, floater, and non-resident are given a free hand to gain results satisfactory to themselves. There are no presumptions or inferences in its favor. The voter, wishing to cast an absentee vote, must comply with all the

statutory demands, and the power of the board of elections is held within those lines.''

The testimony of Mrs. Zadra fails to show that she complied with all mandatory provisions required by section 3 to be performed by the voter and her vote should not have been counted for Mrs. Grabow.

Carrie D. Keller testified by deposition that she voted in precinct 10, ward 2, Grand Junction, Colorado: ''I identified myself to the judges of the precinct where I voted and did all that the judges stated was necessary for me to do in order to properly identify myself.'' ''I gave my absent voter's ballot, unmarked, to the judges of the election.'' ''At the time of exhibiting the ballot, unmarked, I subscribed to and made oath to an affidavit containing the allegations of my application to vote, and stating that the ballot I had was received, exhibited to, and thereafter marked, in the presence of the board or official at that time. I did not vote at this general election other than by said absent ballot.'' ''After I had marked the ballot the affidavit, which I signed, I placed it with the ballot and put both the ballot and the affidavit in the official envelope and sealed the official envelope in the presence of the judges of the election and then took the envelope and deposited it in the post office in Grand Junction.'' ''My ballot was cast in the manner above described on November 4th, 1930.''

██ ██ From her testimony, it appears that Mrs. Keller did everything required of her to be done by said section 3. It is urged that she failed to enclose the affidavit in the envelope with her ballot and that such failure vitiated her vote. The act does not provide that the voter personally enclose said affidavit in the envelope, but makes such the mandatory duty of the election official before whom the voter presents himself. One who has performed every act required of her cannot be disenfranchised because of irregularities or mistakes of election officials. *Kellogg v. Hickman,* 12 Colo. 256, 21 Pac. 325; *Lehman v. Pettingell,* 39 Colo. 258, 89 Pac. 48. Mrs. Kel-

ler testified she personally enclosed the affidavit with her ballot and mailed it. The undisputed evidence is that when the envelope containing her ballot was opened it did not contain said affidavit. Whether she was mistaken in her statement that she had enclosed the affidavit or whether the members of the canvassing board were in error in stating that said affidavit had not been received cannot be determined from the record. In any event, since it was the duty of the election official and not that of the voter to enclose said affidavit in the envelope with the ballot, the fact that it was not received by the canvassing board should not destroy her vote. *Goodell v. Judith Basin County,* 70 Mont. 222, 224 Pac. 1110; *Pratley v. State,* 17 Wyo. 371, 99 Pac. 1116. The vote of Mrs. Keller was properly counted for contestee.

The record discloses that John H. Calhoun prior to November 18, 1918, resided and voted in Ouray, Colorado, thereafter temporarily moving to Denver where he has lived ever since; that he has voted by absent voter's ballot in Ouray, Colorado, at every election since said date and has never registered or voted elsewhere.

■ The domicile or legal residence of a voter is determined by act and intention. In *Kay v. Strobeck,* 81 Colo. 144, 149, 254 Pac. 150, the rule is announced: "One may have only one domicile or residence at any one time, and his domicile or voting place remains and continues until he has acquired a legal residence or domicile elsewhere. The law encourages all legal voters to exercise their right to vote, and in cases of doubt as to a voter's residence it is resolved in favor of permanency of residence in the precinct where he casts his ballot. * * * The evidence as we read it shows that these five voters intended to have, and did have, long before this election, their permanent residence in Eaton in this school district. That residence once acquired remains until they have actually abandoned the residence with an intention to renounce the same and to acquire a residence elsewhere. They did not abandon it; they did not gain an-

other residence. To have acquired another residence there must be both an act and an intention to do so; that is, a removal from the old place with the intention of acquiring a new one elsewhere and these two things *must* concur.'' (Citing cases.)

The intention of Mr. Calhoun to retain Ouray as his legal residence has been constant as evidenced by seeking to vote and voting at every election since 1918 as a registered voter of Ouray county. His absence from Ouray county, although of long duration, does not negative such intention. The vote of John Calhoun for contestee was properly counted.

Eliminating the vote of Mrs. Dexter for contestor and Mrs. Zadra for contestee, for the reasons herein mentioned, the result would be 510 votes for contestee and 509 votes for contestor. Contestee, retaining a majority of all votes cast for the office of county superintendent of schools of Ouray county, was duly elected.

Judgment affirmed.