No. 16,520.

WAGGONER *v.* BARELA.

(230 P. [2d] 586)

Decided April 9, 1951.

Mr. WILLIAM B. NICHOLAS, Mr. FLOYD K. MURR, Mr. GEORGE H. BLICKHAHN, Mr. GEORGE H. BLICKHAHN, JR., for plaintiff in error.

Mr. CHARLES S. VIGIL, Mr. ERNEST U. SANDOVAL, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties by name. On May 1, 1950, an election was held by School District No. 11, at Gardner, Colorado, in Huerfano county, for the purpose of electing a president of the school board for said school district. Waggoner and Barela were candidates for the office. The district was a third class school district, and at the time of the election Waggoner was president of the board and was seeking re-election.

Notices of the election were posted pursuant to statutory requirements. These notices contained the statement that the polls would be open from two o'clock P.M. to five o'clock P.M. The following facts are undisputed: Between the hours of two o'clock and five o'clock P.M., one hundred and thirty votes were placed in the ballot box. No challenge or objection to any vote was made at the time it was cast. The polls were closed and the school board counted the ballots two or three times, and on each count the result was sixty-six votes for Barela, and sixty-four votes for Waggoner. Waggoner testified: "Q. When you counted the votes the total was 66 for Tobe Barela and 64 for Fred Waggoner, is that correct? A.

That's true. That's not including my vote. Q. Well, at the time you counted the votes, I asked you: Is that correct? A. That's true. Q. Did you count them again to verify that result? A. That's true. We counted them three different times." After the result was determined from a count of the votes, to the casting of which no objection had been made, the testimony is, that Waggoner threw out two ballots that were written on "different paper." The record does not show the nature of the difference in the paper used by the voters who cast the votes which were thrown out. In school elections in districts of the third class, the votes are not numbered; no registration books are present; and no record of the electors who appeared to vote, or who actually voted is required. Under section 79, chapter 146, '35 C.S.A., "Each voter shall prepare his own ballot by writing the name of the candidate or candidates for whom he wishes to vote on a piece of paper." Thus there was no way to determine, after the count had been made, who cast the ballots which were thrown out. Waggoner testified in this connection: "A. * * * We threw out these two that were written on different paper; we figured they were not legal ballots. Q. That left the vote 64 for Fred Waggoner and 64 for Tobe Barela? A. That's true." He then related his further action as follows: "Well, I told them it had always been the custom in the district in case of a tie, the president voted. I understood in case of a tie the president would cast his vote, which I did." "Q. Now as a matter of fact, you actually broke the tie of 64-64, by casting your vote after the polls had closed, isn't that correct? A. That is correct." Thereupon the secretary of the board certified to the county Superintendent of Schools that Waggoner had been elected. She testified that she so certified because, "after those two ballots were rejected, I knew he was elected by his vote."

Within the time allowed by statute, Barela filed his

statement of contest of the election, pertinent parts of which were as follows:

"Third: That after the polls were closed, the ballots were counted and tabulated, and the results were as follows:

    Tobe Barela: 66          Fred Waggoner: 64.

"Fourth: That thereafter, two legal votes were rejected these two votes having been cast for contestor, and that no valid reason existed for rejecting these two ballots.

"Fifth: That as a result of casting out these two votes, the result was a tie, and thereafter, contestee, Fred Waggoner was allowed to vote after the polls were closed, and thus the tie was resolved in favor of contestee."

Waggoner filed his answer, in which he admitted that he cast a vote after the polls were closed, but denied all other material allegations.

The trial court ruled that it could not consider the evidence relating to the admitted fact that two votes actually cast for Barela were thrown out, for the reason that the statement of contest failed to include a "list of the number of persons" whose votes were rejected. Counsel for Waggoner contended that section 287, chapter 59, '35 C.S.A., was applicable. Said section, as applied to elections for county office, provides: "When the reception of illegal or the rejection of legal votes is alleged as the cause of the contest, a list of the number of persons who so voted, or offered to vote, shall be set forth in the statement of contestor, * * *."

The trial court ruled that the allegations of paragraph fourth of the statement of contest should be stricken, and proceeded to trial upon "the other cause of contest" as set forth in said statement of contest filed by Barela.

Having eliminated the question growing out of the rejection of two ballots, the court entered findings, inter alia:

"That the vote of the said Fred Waggoner was illegally cast and invalid and should not have been

counted in determining the results of said election, and should be deducted from contestee's total number of votes.

\* \* \*

"That said election resulted in a tie vote, sixty-four votes having been cast for said contestor and sixty-four votes having been cast for said contestee." Judgment was entered in harmony with these findings.

Waggoner brings the cause here for review by writ of error, contending that the court should have dismissed the contest for insufficiency of the statement of contest; that after paragraph fourth was stricken, no valid ground of contest remained; and that the court was without jurisdiction to proceed with the trial. He further contends that the trial court erred in permitting Barela to amend his statement of contest to show that the election was held on May 1st instead of May 11th, as erroneously alleged in the original statement; and that the court erred in not sustaining his contention that a son of Barela, who cast a ballot without objection, was in fact a mental incompetent whose vote should not have been counted.

Barela, for cross specification of points, asserts that the trial court erred in declaring that the court was "without jurisdiction to hear the specific cause of contest, stating that there were two legal ballots that were rejected after the ballots had been placed in the box, and after they had been counted and canvassed; \* \* \* " and that the court erred in not finding that he had been elected by receiving 66 votes to 64 votes cast for Waggoner.

## Questions to be Determined.

First: *In a school election conducted in a third class school district, where no challenge is made to the qualifications of any voter to cast his ballot, and ballots are written on slips of paper and deposited in the ballot box by all who asserted the right to vote, can the school board which conducts the election lawfully refuse to*

*count ballots deposited in the ballot box, upon the sole ground that said ballots were written on a different kind of paper than that used by other electors?*

This question is answered in the negative. The statute, section 79, chapter 146, '35 C.S.A., governing school elections in school districts of the third class expressly provides that, "Each voter shall prepare his own ballot by writing the name of the candidate or candidates for whom he wishes to vote on *a piece of paper.*" (Italics supplied) There is no duty on the part of the school board to provide the "pieces of paper," and certainly there is no authority in the board to prescribe the exclusive quality of paper which shall be used by the voter in preparing his ballot. In such elections there is no such thing as an official form of ballot. In the present case, for all that appears, the ballots in question were cast by qualified electors, in full compliance with the statutory requirement that the name of their choice for the office be written upon a "piece of paper." The board was wholly without authority to refuse full recognition of the said votes, and they should have been counted in determining the final result of the election.

Second: *Should the statute, concerning election contests, which provides that, when the "reception of illegal" or the "rejection of legal" votes is alleged as the cause of the contest, a list of the number of persons who "so voted" or "offered to vote" shall be set forth in the statement of contestor, be invoked against the contestor under the facts and circumstances of this case?*

The answer is, "No." We do not consider the statute applicable to the situation in which Barela was placed by the unlawful conduct of Waggoner in bringing about the nullification of the two votes which were "thrown out." The term "rejection of legal votes," as used in the statute must be construed in connection with the clause which follows in explanation of what was intended. That which limits and explains the term "rejection of legal votes" is the phrase "or offered to vote." Within the

meaning of this statute a vote is rejected when an elector offers to vote and is not permitted to cast a ballot. The rejected vote is a vote that is not cast—one that did not reach the ballot box. If an elector is permitted to cast a ballot and to deposit it in the ballot box, the vote is accepted and must be counted unless it is attacked upon the other ground named in the statute, to wit, "the reception of illegal" votes, in which event the statute requires a list of the names of the persons who "so voted," that is, who voted illegally, to be set out in the statement of contest. The term "so voted," refers to alleged illegal votes in the ballot box. The term "or offered to vote" refers to electors the rejected votes of whom were not cast or placed in the box.

It thus is clear that the ground of contest alleged by Barela was not the "rejection" of legal votes, nor was it the "reception" of illegal votes. After the votes were once deposited in the ballot box they could only be challenged upon the ground that illegal votes were received. Since the votes in question were admittedly cast for Barela, the attack upon them would not be made by him. Waggoner might lawfully have attacked the votes by filing a contest on his own account and alleging that illegal votes were received. However, he and the other two members of the board were wholly without authority or power to arbitrarily refuse to count votes, once accepted, after the result of the election was apparent, in order that a tie vote might result from the failure to honor all votes in the ballot box. Waggoner, who does not deny that such action was the result of his own suggestion, could not thus throw upon Barela the burden of contesting the election. The statute, upon which Waggoner relies, has no application to the facts in this case, and the trial court erred in applying it thereto. Nothing in this opinion is inconsistent with the cases cited by counsel for Waggoner: *Kay v. Strobeck*, 81 Colo. 144, 254 Pac. 150; *Schwarz v. County Court of Garfield County*, 14 Colo. 44, 23 Pac. 84; *Town of Sugar*

*City v. Board of Commissioners,* 57 Colo. 432, 140 Pac. 809. These cases were considered and followed in our recent opinion in *Graham v. Swift,* 123 Colo. 309, 228 P. (2d) 969, decided February 19, 1951.

Third: *Did the trial court err in permitting the statement of contest to be amended to show that the election was held on May 1, 1950, instead of on May 11, as erroneously alleged in the original statement?*

This question is answered in the negative. In *Graham v. Swift, supra,* we held that, in an election contest an amendment to the statement of contest should have been permitted to correct a mistake in the name of the contestee. It would seem clear that the error in fixing the date of the election should be corrected by amendment since there could be no possible doubt concerning the particular election out of which the contest arose.

The contention of Waggoner, that the trial court erred in not rejecting the vote of Barela's son, is without merit. There was ample evidence to support the findings of the trial court to the effect that this elector was qualified and had cast a valid ballot.

The judgment is reversed and the cause remanded with direction to the county court to enter judgment that Barela was, and is, the duly elected president of the school board for said school district.